In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2226

DOCTORS NURSING & REHABILITATION CENTER,

*Plaintiff-Appellant,*

*v.*

KATHLEEN SEBELIUS, Secretary of Health and
Human Services, United States Dept. of Health
and Human Services,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 08 CV 3096—**Jeanne E. Scott**, *Judge.*

ARGUED DECEMBER 10, 2009—DECIDED JULY 16, 2010

Before POSNER, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* After Doctors Nursing & Rehabil-
itation Center, a nursing home in Salem, Illinois, sued the
Secretary of Heath and Human Services, claiming that
Medicare underpaid it for certain services provided to
Medicare beneficiaries, the agency decided to reopen its

administrative proceedings and reconsider the nursing home's claims. The district court dismissed the suit, reasoning that the agency's reopening eliminated the prerequisite final decision and stripped the court of jurisdiction. Because we hold that the agency may not reopen its proceedings after judicial review begins without permission from the court, we reverse.

I.

The underlying payment dispute involves the rate at which Medicare reimburses skilled nursing facilities for pulse-oximetry tests—a routine and non-invasive means of testing oxygen levels in the blood. Medicare reimburses nursing facilities in one of two ways. When a beneficiary's entire stay is covered by Medicare Part A, which provides coverage for in-patient hospital and other institutional care services, Medicare generally pays a per diem rate to the facility. When the stay is not covered under Part A, Medicare reimburses some covered services on a per procedure basis under its Part B supplemental insurance. Since 1999, this per procedure rate has declined significantly—abruptly at first in 2000 and gradually each year since. All of the disputed payments in this case were properly made on a per procedure basis, but the nursing home believes that the reductions in the per procedure rate were unlawful.

The nursing home first presented its claims through the agency's administrative channels. It filed its claims, as required, with its "fiscal intermediary" (the private contractor responsible for paying Medicare claims in

nursing facilities), which determined the applicable fee schedule and paid the nursing home according to the rates therein.

Believing that the proper reimbursement rate for its services was several times the amount indicated in the fee schedule, the nursing home asked for a "redetermination" from its fiscal intermediary. When a fiscal intermediary receives a request for redetermination, it must decide whether the contested issue was an "initial determination" or simply a rote application of a scheduled rate. Only initial determinations are subject to administrative review and eventually a hearing. Believing that the issue involved a rote application of the physician fee schedule payment rate and that the nursing home was challenging the rate itself, the fiscal intermediary decided that the nursing home's payment did not involve an "initial determination" and denied the redetermination request.

When its redetermination request failed, the nursing home again followed the prescribed administrative procedure and asked the Qualified Independent Contractor (the contractor that handles appeals from the fiscal intermediary) for a "reconsideration" of the fiscal intermediary's dismissal of the redetermination request. That Qualified Independent Contractor affirmed the fiscal intermediary's dismissal and informed the nursing home the decision was "final and not subject to any further review."

The nursing home then sued, complaining that the agency had underpaid it for the pulse-oximetry tests by

illegally reducing the rate under the applicable fee schedule. In the meantime, however, the agency decided that its contractors had erred in terminating the administrative review process. It concluded that the nursing home was entitled to additional process before the agency and sought to reopen its administrative proceedings. The agency filed a motion to dismiss arguing that the district court should dismiss the case for lack of jurisdiction because there was no longer a final decision to review. The district court dismissed the case for want of jurisdiction. The nursing home appeals.

## II.

## A.

The nursing home argues that the agency may not divest the courts of jurisdiction simply by unilaterally reopening its proceeding after the lawsuit was filed: if there was a final decision that provided subject matter jurisdiction at the time the lawsuit was filed, the agency may not disturb that jurisdiction.[1]

---

[1] This presumes, of course, that the court had jurisdiction in the first place. Concerned that the nursing home was challenging the calculation of the physician fee schedule rate for pulse oximetry—a challenge we may not entertain pursuant to 42 U.S.C. § 1395w-4(i)(1)—we ordered supplemental briefing from both parties to clarify whether the nursing home's challenge was precluded by that statute. After considering the supplemental filings, we are satisfied that the suit can be

(continued...)

We review a dismissal for lack of subject matter juris-diction de novo. *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008). Jurisdiction over suits involving claims for pay-ment under the Medicare Act arises under 42 U.S.C § 1395ff(b)(1)(A), which adopts by reference the judicial review provisions applicable to the Social Security Ad-ministration at 42 U.S.C. § 405(g). Section 405(g), in turn, provides for judicial review of any "final decision . . . made after a hearing."

To be sure, there was no such "final decision . . . made after a hearing" in this case. But contrary to the Secretary's suggestion, that fact has no effect on our jurisdiction: it is well established that the agency may waive the hearing requirement under § 405(g). *See Matthews v. Eldridge*, 424 U.S. 319, 328-30 (1976). Judicial review is permitted when there is a lack of additional

---

[1] (...continued)

characterized as asserting that the agency either applied (a factual dispute) or should have applied (a legal dispute) a rate other than the physician fee schedule rate in the first place. The agency does not suggest that this argument is so unsubstantial that it cannot support our jurisdiction. *See Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010) ("A suit that is utterly frivolous does not engage the jurisdiction of the federal courts."). So the court had jurisdiction—ab initio at least—to determine which fee schedule the agency applied and whether it was correct. We note, however, that if the agency correctly applied the physician fee schedule rate, judicial review must instantly cease: Congress has expressly precluded judicial review of the calculation of physician fee schedule rates.

administrative review, whether due to exhaustion or waiver.[2] So we will simply refer to the Qualified Independent Contractor's dismissal of the nursing home's reconsideration request, which was "final and not subject to further review" and by which the agency waived any requirement of exhaustion of additional administrative remedies, as the agency's final decision.

The nursing home argues that the general rule is that subject matter jurisdiction is determined at the time of filing. The Secretary responds that so long as the agency has authority under its regulations, it may reopen its administrative proceedings. And she asserts that once it reopens the proceedings, there is no longer a "final decision" for the courts to review and any suit based on the

---

[2] After oral argument, the agency brought our attention to a change in the regulation governing the Qualified Independent Contractor's reconsideration decision. 42 C.F.R. § 405.974(b)(3). The regulation now states that the decision is "binding"—rather than "final"—"and not subject to any further review." In its final rule implementing this change, the agency noted that, unlike a "final" decision, a "binding" decision is not necessarily "a final decision of the Secretary for purposes of exhausting administrative remedies when seeking judicial review." 74 Fed. Reg. 65296, 65308. This, the agency argues, clarifies that the affirmation of the dismissal of the nursing home's redetermination request in this case was never a "final decision . . . made after a hearing." But because the agency may waive the exhaustion requirement, it cannot insulate its decisions from judicial review simply by refusing to label an otherwise appealable decision as a "final decision" within the meaning of the statute.

earlier decision must be dismissed for want of jurisdiction. Because this argument is not based on anything unique to the Medicare regulatory context, the Secretary effectively would have us hold that an agency may always divest the courts of jurisdiction with post-filing reopening and reconsideration, notwithstanding the traditional rule that jurisdiction is determined at the time of filing.

We have never specifically considered this question of whether the agency can reopen a Medicare claim and thereby destroy federal jurisdiction. For three reasons, however, we hold that when a suit is filed under § 405(g), the agency may not divest the federal courts of jurisdiction by unilaterally reopening its administrative proceedings.

First, the general rule is that "[w]e analyze jurisdiction based on the events at the time the case is brought." *Hukic v. Aurora Loan Services*, 588 F.3d 420, 427 (7th Cir. 2009) (citing *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004)). So we presume that the general rule applies here. It is true, as the agency points out, that the rule is primarily encountered when determining the prerequisites of diversity jurisdiction. *E.g.*, *id.*; *Smith v. Widman Trucking and Excavating, Inc.*, 627 F.2d 792, 799 (7th Cir. 1980). But the rule is not so limited. *See, e.g.*, *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 194 (7th Cir. 2008) ("If jurisdiction exists at the outset of a suit, subsequent procedural events will not divest the court of that original jurisdiction.").

Second, Congress has specifically spoken on the issue of when and how the agency can reopen its administra-

tive proceedings after judicial review begins. The sixth sentence of § 405(g) allows the court "on motion of the [agency] made for good cause shown before the [agency] files [its] answer, [to] remand the case to the [agency] for further action."[3] While this provision addresses only the court's power to remand, and not the agency's own authority to reopen its proceedings, it assumes that an agency may not disrupt federal jurisdiction on its own. Otherwise, the remand authority in § 405(g) would serve no purpose: the agency would never need to ask the court for a remand. By specifying the procedure for remand, Congress has limited the agency's authority under § 1395ff(b)(1)(G) to reopen and revise a prior determination.

Finally, determining whether a final decision exists at the time of filing comports with the normal procedures of appellate review. Ordinarily, when one tribunal properly takes a case on appeal, the inferior tribunal transfers authority over the case. *Gao v. Gonzales*, 464 F.3d 728, 729 (7th Cir. 2008). Thus, the majority rule (accepted by this circuit) is that while a district court may consider a motion for relief from a judgment under Federal Rule of Civil Procedure 60, and even deny the motion, while an

---

[3] Sentence six, which also allows a claimant to request a remand on the basis of new and material facts, is one of two remands available under § 405(g). Sentence four provides the other, allowing the court to remand upon a "judgment affirming, modifying, or reversing" the agency's decision. These are the exclusive methods of remand available to the district court. *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

appeal is pending, it must request permission from the appellate court to grant the motion. *Washington v. Bd. of Educ.*, 498 F.2d 11, 16 (7th Cir. 1974); *see also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE, § 2873. Otherwise, a district court could eliminate a final judgment, and with it federal appellate jurisdiction. This precisely parallels the rule that Congress established with § 405(g): the inferior tribunal (the agency) must request permission from the appellate tribunal before it reopens its final decision.[4]

The Secretary argues that we have already held that the time-of-filing rule does not apply to judicial review of agency decisions, citing to *Gao v. Gonzales*, 464 F.3d 728. In that case, the petitioner had declined to challenge the Board of Immigration Appeals decision ordering his deportation, but after second thoughts asked the Board to reopen its decision. *Id.* at 729. When the Board denied his motion to reopen, he petitioned this court for review. While his petition was pending, the Board changed its mind, reopened the deportation order on its own

---

[4] This holding has no bearing on the effect of a motion to reopen a final administrative decision filed by the *plaintiff* in a suit involving judicial review of that decision. *See Wade v. FCC*, 986 F.2d 1433, 1434 (D.C. Cir. 1993) (holding that a motion to reopen divested the federal courts of jurisdiction by analogy to Federal Rule of Civil Procedure 59(e), which—unlike Rule 60—does divest a court of appeals of jurisdiction over a previously filed action (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982))).

accord, and asked the court to dismiss the petition. We dismissed the petition, holding the Board was authorized under the immigration statutes and controlling case law to continue its administrative proceedings even while a petition was pending in a Court of Appeals. *Id.* at 730. We reasoned that because the Board had the authority to consider whether to reopen its earlier deportation order, it could also decide to reopen, even on its own accord. And because it had authority to reopen the case and thereby rescind the denial that the petitioner was challenging, there was no longer a final decision for us to review. We thus concluded that we lacked jurisdiction to consider his petition. *Id.*

But *Gao* does not control here for two reasons. First, *Gao* was fundamentally a mootness case: because the petitioner had challenged only the agency's refusal to reopen his case, there was no more relief that the court could have granted once the agency itself decided to give the petitioner the very thing he was asking of the court. Second, *Gao* did not establish a general rule that agencies may divest courts of jurisdiction by reopening final decisions. Rather, *Gao* was careful to justify its holding based on the particulars of the immigration context. It noted that the Supreme Court has interpreted the statutory scheme of immigration review as allowing for concurrent review of a case by both the Board and the courts, even though this concurrent review is one of the specific inefficiencies prevented by the requirement that a party exhaust his administrative remedies before seeking judicial review. *Id.* at 729. We stressed that it was because of this statutory scheme that the Board was

empowered to consider, and decide, the very same question that was pending before the court.

So while *Gao* teaches that the time-of-filing rule does not apply in every administrative context, it does not speak to *this* administrative context. And as we have noted, rather than allow for concurrent review in this context, Congress has expressly provided a mechanism by which a district court can return the case to the agency before the case has progressed beyond the pleadings.

The Secretary also cites an older social security claim case from the Sixth Circuit in support of her position that an agency's reopening of a case subsequent to the filing of a lawsuit deprives the court of jurisdiction. *Bisson v. Secretary of Health and Human Services*, 787 F.2d 181 (6th Cir. 1986), involved a request for mandamus relief by a social security claimant challenging the Social Security Administration's denial of benefits. The plaintiff had applied for benefits and received an administrative denial. *Id.* at 182. After a hearing, an Administrative Law Judge ("ALJ") returned the case to have the record corrected and for further proceedings. The agency took no additional formal action. The plaintiff sued, seeking mandamus relief to enforce the ALJ's decision. Shortly thereafter, the agency decided to reopen the plaintiff's claim. The court held that the agency's reopening deprived it of its mandamus jurisdiction under 28 U.S.C. § 1361 and that it did not have jurisdiction under 42 U.S.C. § 405(g).

The Secretary argues that in *Bisson* the Sixth Circuit adopted the rule she advocates here and that we should

follow suit. But *Bisson*, like *Gao*, was essentially a case of mootness and is similarly inapposite here. The relief that the plaintiff was seeking in *Bisson* was an order that the agency effectively reopen its proceedings and comply with the ALJ's order to reconsider the case. *Id.* at 182. When the agency decided to reopen the application on its own, there was no longer any relief the court could order until the agency had completed its administrative review. Mandamus relief was inappropriate because there was another avenue for relief. *Id.* at 185. And the court did not have jurisdiction over the plaintiff's procedural claims under § 405(g) because they were intertwined with a claim for benefits that was not final. *Id.* In short, *Bisson* did not involve a "final decision" comparable to the decision here, but rather a breakdown in the administrative procedures that the agency itself corrected.

The Secretary next argues that the rationale underlying the time-of-filing rule in the context of diversity jurisdiction, where it originated, does not apply here. For example, absent the rule, a party in a diversity suit might destroy jurisdiction by amending the amount in controversy, thus preventing the case from being heard in a federal forum altogether. Here, by contrast, the agency's reopening would merely delay the eventual judicial review.

But a complete preclusion of federal jurisdiction is hardly the only strategic behavior imaginable, and the risk of manipulation is only one basis for the time-of-filing rule. Under the Secretary's proposed rule, any agency

could strip jurisdiction from federal courts, seemingly at any stage of the proceeding, for any reason. If the agency became concerned that a Court of Appeals—or even the Supreme Court—might issue a decision adverse to its interests, it could reopen its proceedings and yank the case out of the courts, regardless of the amount of resources that had already been expended or the advanced stage of the case. Besides being highly inefficient, it would allow the agency to manipulate federal jurisdiction to frustrate litigants by increasing the time and expense required to pursue claims, and prevent or at least postpone into perpetuity unfavorable precedent.

The Secretary notes that the possibility of manipulation need not concern us because its actions are entitled to a strong presumption of regularity. *Busboom Grain Co., Inc. v. ICC*, 830 F.2d 74, 75 (7th Cir. 1987). This is true. And we do not suggest that there is any evidence that the agency is actively manipulating our jurisdiction. But under the agency's theory, it would enjoy more than a presumption of regularity: its decision, and motivation, would effectively be unreviewable because the courts would have no jurisdiction over the case once a final decision had been reopened.

The Secretary also emphasizes that its reopening occurred early and while the suit was still in the pleading stage. Again, the relatively minor inconvenience and inefficiency *in this case* is beside the point: under the agency's theory, jurisdiction would disappear at any stage, regardless of the inefficiency or expense.

Finally, the Secretary argues that it would be inefficient for the time-of-filing rule to apply in a manner

that would prevent the agency from correcting its own errors and giving full and proper consideration to a plaintiff's claims. Some delay-related hardship is indeed the price we pay for efficiency in our "massive, complex" programs, such as Medicare. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). We recognize that the interests in administrative efficiency often weigh heavily in favor of the agency when balanced against an individual plaintiff's interest in having judicial review of his claim.

But this advantage is not absolute, particularly once concerns of judicial efficiency enter the calculation. Here, Congress has established a method of allowing the agency to revisit its own decisions and correct initial errors that it or its contractors make. At the same time, it has set a limit on how late in the day the agency may revisit a decision—before it files its answer—and provided some judicial oversight by requiring the agency to demonstrate good cause to the court before the case can be remanded for further proceedings. The Secretary's position would make this provision largely irrelevant.

So we reject the Secretary's theory, which would give the agency the unreviewable power to manipulate federal jurisdiction without any guarantee of efficiency. Instead, we read Congress's specification of the district court's power to remand in § 405(g)—the same section that authorizes judicial review in the first place—as a limitation on the agency's authority under § 1395ff(b)(1)(G) to reopen and revise its determination. Thus, we hold that under § 405(g) the agency may not, during the pen-

dency of judicial review, reopen and revise a final decision without permission from the court.

B.

As we have noted, § 405(g) provides a mechanism for a district court to remand a case to an agency if the agency moves for such a remand before it files its answer. The Secretary suggests that if we reverse on the jurisdictional question, we remand to the district court with instructions to remand the case to the agency—in effect, it asks us to treat its motion to dismiss as a motion to remand under § 405(g). Although we have never had occasion to consider a remand by a district court under the first clause of sentence six of § 405(g),[5] we think it plain from the discretionary language of the statute—"a district court *may* remand a case"—that we would review any such decision for an abuse of discretion. *Accord Dudley v. Astrue*, 246 Fed. Appx. 249, 251 (5th Cir. 2007) (unpublished) (reviewing decision to remand upon agency's motion for abuse of discretion).

Of course, if the agency could not satisfy the "good cause" requirement, allowing the district court to remand the case to the agency would make little sense and might

---

[5] Most of our, and other circuits', precedents on sentence six involve the second clause: we review de novo a district court's determination that new evidence warrants a remand. *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999).

simply solicit an unnecessary appeal.[6] The nursing home argues that the agency cannot show "good cause" either under § 405(g) or its own regulations. According to the Secretary, the agency wishes to reopen to consider whether its contractors applied the correct fee schedule. The nursing home argues that the contractors applied the correct fee schedule, but that the fee schedule rate was calculated in violation of the statute. Which fee schedule the contractor actually applied is an issue of fact still unresolved at this stage. The agency certainly has an interest in making sure that it agrees with its contractors' decisions before subjecting those decisions to judicial review. We cannot say that "good cause" is so clearly lacking that the district court would abuse its discretion if it remanded the case to the agency.

We expect that the district court will give due deference to the agency's determination of whether it has "good cause" to reopen its decision. And, if "good cause" has been established, we assume that the weighty interest of an agency in correcting its own mistakes will generally prevail in the absence of concerns of strategic behavior or gross inefficiency. At the same time, we note that the district court has the discretion to grant or deny the motion, notwithstanding the agency's "good cause." The district court must make its own evaluation of the ad-

---

[6] Although remands to the agency are not ordinarily final judgments that are appealable under 28 U.S.C. § 1291, we have held that in some cases, remands under sentence six of § 405(g) are appealable under the doctrine of practical finality. *Travis v. Sullivan*, 985 F.2d 919, 920-23 (7th Cir. 1993).

ministrative need for a remand, the interests in judicial efficiency and finality, and the hardship to the litigants. Therefore, we remand the case to allow the district court to consider whether to grant a remand in the first instance.

## III.

We hold that the agency does not have the unilateral authority to reopen its administrative proceedings once judicial review of the agency's final decision has begun. Rather, the agency may, at any point prior to filing its answer and with a showing of "good cause," move the district court to remand the case to the agency for further proceedings. Accordingly, we REVERSE the district court's dismissal of the case for lack of subject matter jurisdiction and REMAND the case for further proceedings consistent with this opinion.