[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14057

_____

PURPOSE BUILT FAMILIES FOUNDATION, INC.,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,
SECRETARY OF VETERANS AFFAIRS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-60938-MGC

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and MARCUS,
Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the withdrawal of allegedly unlawful notices to a federal grant recipient rendered moot the grantee's claims for relief under the Administrative Procedure Act. *See* 5 U.S.C. §§ 701–706. Purpose Built Families Foundation is a Florida nonprofit and federal grantee that serves veterans and their families. In 2022, the Department of Veterans Affairs notified the Foundation that activities and payments under five grants would be terminated or withheld. The Foundation sued the Secretary of Veterans Affairs under the Act and received a temporary restraining order. The Department then withdrew the challenged notices, and the Secretary moved to dismiss the action as moot. The district court granted the motion. Because the Foundation's claims are moot, we affirm.

## I. BACKGROUND

Purpose Built Families Foundation is a Florida nonprofit that serves veterans and their families. The Foundation receives grants under the Federal Grant and Cooperative Agreement Act. *See* 31 U.S.C. §§ 6301–6309. The Department of Veterans Affairs provides these grants to reduce veteran homelessness in South Florida and provide other vital support services. The Foundation received three grants under the Department's Supportive Services for Veteran Families program and two grants under its Grant and Per Diem program.

In 2021, the Department conducted an onsite review or financial audit of the Foundation's management of the Supportive

Services grants. The Department issued a report questioning certain expenses that the Foundation had incurred. The report identified "major fiscal mismanagement activities." The Department also began reviewing the Foundation's management of the Per Diem grants in March 2022. That review was set to continue on May 17, 2022.

On May 11, 2022, the Department took adverse action in separate letters about the five grants that it had awarded the Foundation. One letter addressed the three Supportive Services grants. The other addressed the two Per Diem grants.

The Supportive Services letter notified the Foundation that the Department would "terminate" the three grants "upon 7-days receipt of this notice." The letter cited the audit results, listed "major fiscal mismanagement" decisions by the Foundation, stated that the Foundation was "in violation of" its grant agreement, and said that, as a result, the Department would "terminate" the grants.

The Per Diem letter notified the Foundation that, based on the "preliminary results" of the Per Diem review, the Department was "immediately withhold[ing]" activities and payments under the two grants. The withholding would "remain[] in effect pending" further review of the Foundation's grant activities. The letter also "serve[d] as an intent to suspend" all Foundation activity related to the Per Diem grants. Suspension would take effect 30 days after May 11 "unless results of the [Department] audit" proved that the Foundation was complying with its grant obligations. The Department enumerated "[p]reliminary findings" that suggested potential

noncompliance and raised concerns about the Foundation's fitness to execute the Per Diem grants. The letter stated that the preliminary review proved that the Foundation was "in danger of materially failing to comply" with its grantee obligations; that as the "review continue[d]," the Department would "engage" the Foundation to "ensure efficient resolution"; and that the Per Diem grants might be "continued" "[u]pon completion" of the review.

The Foundation sued the Secretary in the district court and moved for a temporary restraining order and preliminary and permanent injunctive relief. The Foundation argued that the May 11 letters were arbitrary and capricious and deprived the Foundation of due process of law. *See* 5 U.S.C. § 706(2). The Foundation also sought declaratory relief.

To "preserv[e] the status quo" for the grants, the district court entered a temporary restraining order until May 19. The court also set a hearing for the same day. At that hearing, the parties agreed to an extension of the temporary restraining order, and the district court referred the matter to a magistrate judge to decide whether the order should be "dissolved, extended[,] or converted into a preliminary injunction." *See* 28 U.S.C. § 636(b)(1)(A)–(B). The hearing before the magistrate judge was scheduled for June 2022.

On May 19, 2022, the Department withdrew its May 11 notice of intent to terminate the Supportive Services grants. In a letter to the Foundation, the Department granted the Foundation's "request for additional time" to contest the findings conveyed in the May 11 notice. The Department "withdr[ew]" the notice, gave the

Foundation 30 days to submit a response to the audit, and promised to "issue a final decision," and to notify the Foundation of that decision, upon "receipt and review" of any submitted materials.

On May 25, 2022, the Department also withdrew its May 11 notice of withholding and intent to suspend the Per Diem grants. In a letter to the Foundation, the Department granted the Foundation's "request for an opportunity to review the final [a]udit report" and to "respond to any issues" that the Foundation wished to contest. So the Department "withdr[ew]" its notice and promised to send the Foundation a copy of the final audit report and to "advise as to corrective action, if any, that may be required."

The Secretary then moved to dismiss the complaint on two grounds. First, the Secretary argued that the district court lacked subject-matter jurisdiction under the Administrative Procedure Act because the challenged letters were not "'final' within the meaning of 5 U.S.C. § 704." *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003). The Secretary stated that the Department had "reversed" the challenged actions—the May 11 letters—and that the reversal deprived the district court of jurisdiction. Second, the Secretary argued that the Foundation's claims were moot because they challenged decisions that "no longer exist[ed]."

Before the district court ruled on the motion to dismiss, the magistrate judge recommended that the Foundation's motion for a preliminary injunction be denied. The magistrate judge concluded that because the Foundation was, after the Department

withdrew the notices, only "under the *threat* of losing its funding," any injury was not irreparable. The magistrate judge declined to address whether the Foundation's claims were moot.

The district court granted the Secretary's motion to dismiss and denied as moot the report and recommendation. Focusing on the text of the May 11 letters and applying the two-part test for finality of agency action, *see Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), the district court ruled that the May 11 notice of intent to terminate the Supportive Services grants was a final agency action but that the May 11 notice of withholding of the Per Diem grants was not. The district court then ruled that the withdrawal of the May 11 notice of intent to terminate "render[ed] [that notice] a nonfinal agency action, and this case moot." Last, the district court rejected the Foundation's argument that the Act allows district courts to enjoin nonfinal agency action. *See* 5 U.S.C. § 705.

The Secretary moved to supplement the record on appeal with three letters that the Department sent the Foundation in early 2023, after the district court's decision. *See* Fed. R. App. P. 10(e)(3). The first letter notified the Foundation of the Department's intent to terminate the Per Diem grants in 30 days. The second letter terminated the Per Diem grants after considering and rejecting the Foundation's objections to the prior notice. And the final letter notified the Foundation of the Department's intent to terminate the Supportive Services grants in seven days. The Secretary argues that the "existence and content" of these letters support his mootness argument. The Foundation responds that the new letters have "no

22-14057                Opinion of the Court                7

bearing" on the decision under review or, alternatively, that they are "fatal" to the Department's mootness argument. We carried the motion with the case.

## II. STANDARD OF REVIEW

We review *de novo* a dismissal for lack of subject-matter jurisdiction. *Myrick v. Fulton County*, 69 F.4th 1277, 1294 (11th Cir. 2023).

## III. DISCUSSION

The Foundation argues that the Department's withdrawal of the May 11 notices could not and did not divest the district court of jurisdiction. The Secretary responds that the withdrawal of the letters "rendered them nonfinal and the case moot." We agree that the case is moot. Because we may address jurisdictional issues in any order, *Acheson Hotels, LLC v. Laufer*, 144 S. Ct. 18, 21 (2023), we resolve the appeal on this ground alone, and we do not address whether the May 11 notice of intent to withhold payments under the Per Diem grants was a final agency action. *See* 5 U.S.C. § 704.

We begin by granting the Secretary's motion to supplement. We may supplement our record "in the interests of justice" when the new material will aid our review, *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 n.4 (11th Cir. 2003), especially of jurisdictional issues, *see Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1555 (11th Cir. 1989); *Corbett v. TSA*, 930 F.3d 1225, 1231 & n.1 (11th Cir. 2019). As we will explain, the new termination notices help establish that the Foundation's claims are moot and that we lack jurisdiction to assess their merits. The Foundation argues that the Administrative Procedure Act confines our review to the agency record, *see* 5 U.S.C.

§ 706, but the Act does not bar federal courts from considering developments outside the agency record when policing the exercise of judicial power. Nor could it; we never may exercise jurisdiction over a moot case. *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008).

The Foundation argues that subject-matter jurisdiction "attaches" when a suit is filed and that agencies can "do nothing" to divest a court of jurisdiction. The Foundation acknowledges that the Department withdrew and "vacated" its May 11 notices. But, it says, the "basic rule of federal subject-matter jurisdiction"—that jurisdiction must exist when suit is filed—makes no exception for the Administrative Procedure Act, and the rule bars the Department from rendering the Foundation's claims moot. The Secretary responds that agencies can render claims moot and so "deprive" courts of the "ability" to adjudicate them. *See Djadju v. Vega*, 32 F.4th 1102, 1108 (11th Cir. 2022). We agree with the Secretary.

A case is moot when later events "deprive the court" of the power to grant "meaningful relief." *Id.* (citation and internal quotation marks omitted). Because "mootness is jurisdictional," a moot case "must be dismissed." *Id.* at 1106 (citation and internal quotation marks omitted). Any decision on the merits of a moot case would be advisory, and Article III grants federal courts no authority to issue advisory decisions. We may not declare right or wrong an act that has no "continuing effect." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

22-14057               Opinion of the Court                    9

Mootness arises only after "the case has been brought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). The mootness doctrine reflects that parties must *continue* to have a personal stake in the resolution of a case. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013). So mootness is necessarily gauged "at the present time." *Djadju*, 32 F.4th at 1106.

Complaints against agencies are no exception. "[W]ithout doubt," agency action can render moot "what was once a viable case." *Sannon v. United States*, 631 F.2d 1247, 1250–51 (5th Cir. 1980). Agencies can render moot a complaint that challenges agency adjudication, *see, e.g.*, *City of Houston v. HUD*, 24 F.3d 1421, 1429 (D.C. Cir. 1994), or a complaint that challenges rulemaking, *see, e.g.*, *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 103, 106 (D.C. Cir. 2016).

To be sure, subject-matter jurisdiction must exist when suit is filed. *See Cook v. Bennett*, 792 F.3d 1294, 1298 (11th Cir. 2015). It does not follow that a defendant's "later acts" cannot erase that jurisdiction. Parties may not fabricate jurisdiction during suit. But they may destroy it by rendering a case moot.

A Seventh Circuit decision that the Foundation discusses at length does not suggest otherwise. In *Doctors Nursing & Rehabilitation Center v. Sebelius*, our sister circuit held that the Secretary of Health and Human Services could not divest the court of jurisdiction by unilaterally reopening administrative proceedings. 613 F.3d 672, 677 (7th Cir. 2010). The decision mentioned mootness only to

stress that it was not at issue. *Id.* at 678–79 (dismissing mootness precedents as "inapposite").

The Foundation argues that the Department has not rendered the Foundation's complaint moot. It argues that an agency's compliance with an order awarding interlocutory relief cannot render moot the complaint on which relief was granted. The Secretary responds that the withdrawal of the May 11 notices was more than compliance with the temporary restraining order. The Secretary is correct.

The withdrawal of the May 11 letters was not mere compliance with the temporary restraining order. That order "preserv[ed] the status quo regarding [the Foundation's] government grants." The Department would have complied with that order by declining to execute its intended terminations and suspensions until the order was lifted. But the Department "went," as the Secretary explains, "a step further." In response to the Foundation's May 13 request to challenge the May 11 notices, the Department withdrew—that is, reversed—the notices. The Foundation does not dispute the effect of those withdrawals.

The Foundation also argues that the voluntary-cessation and capable-of-repetition-yet-evading-review exceptions to mootness apply. The Secretary responds that neither exception applies. The Secretary is again correct.

A defendant's voluntary cessation of challenged conduct ordinarily does not render a complaint moot. *Djadju*, 32 F.4th at 1108. It does so only if it is "absolutely clear" that the challenged conduct

"could not reasonably be expected to recur." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) (citation and internal quotation marks omitted). We consider three factors to determine whether it is reasonable to think that the agency will reverse course: whether the agency's change in conduct "resulted from substantial deliberation" or was instead "merely an attempt to manipulate jurisdiction"; whether the decision to terminate the challenged conduct is "permanent" and "complete"; and whether the agency has "consistently maintained its commitment to the new policy." *Djadju*, 32 F.4th at 1109. These factors support the conclusion that it is unreasonable to expect the Department to reverse course and reinstate the May 11 notices.

There is no evidence that withdrawal was merely an attempt to manipulate the district court's jurisdiction. The Department afforded the Foundation more process, invited a response, and then reconsidered and revised its findings in part. For instance, the Department extended the deadline to respond to the May 11 notice of intent to terminate the Supportive Services grants; received and reviewed over 250 new documents from the Foundation relevant to those grants; revised its audit report; and "cleared" the Foundation of over 30 questioned actions. And the Department specified at length the audit findings on which it based its ultimate decision to terminate the Supportive Services grants. The Department also gave the Foundation an "opportunity to object [to] and provide information or documentation challenging" the termination of the Per Diem grants; reviewed a letter and new material from the Foundation; "evaluated" anew any potential noncompliance; and

"considered" appropriate remedies. The Department has engaged in a different process and issued new termination letters that it "stands by" now.

The additional review and new termination notices establish that the decisions to withdraw the May 11 notices were "permanent" and are now "complete." *See id.* It has been nearly two years since the Department withdrew the original notices. It would be unreasonable to expect the Department to backpedal now. The Department continues to stand behind its new notices, the most recent of which was issued in March 2023. Although the Foundation pegs the withdrawal as a "momentary 'reversal'" and a "cynical maneuver," the record scuttles those contentions.

The capable-of-repetition-yet-evading-review exception does not apply either. That "narrow" exception triggers only when the "challenged action" is too brief to be litigated before cessation and it is reasonable to expect that the plaintiff will again suffer that "same action." *Health Freedom Def. Fund v. President of U.S.*, 71 F.4th 888, 892–93 (11th Cir. 2023) (citation and internal quotation marks omitted). Two actions are the "same controversy," *id.* at 893 (citation and internal quotation marks omitted), when they are at least "materially similar," *Hall v. Sec'y, Ala.*, 902 F.3d 1294, 1298 (11th Cir. 2018) (citation and internal quotation marks omitted). The Foundation alleges that the Secretary violated the Foundation's right to due process. To assess that challenge, we would compare the process *given* to the process that was *due*. Yet the process given on May 11, 2022, differs appreciably from the process that the Department

has afforded the Foundation since the original notices were withdrawn. The two actions—the May 11 notices and the 2023 termination notices—are not materially similar, let alone "identical," as the Foundation describes them. That the Department ultimately decided to terminate the grants is irrelevant.

The Foundation protests that this conclusion "elevates form over substance" because the new termination notices, like the May 11 notices, allegedly infringe the same legal protections: due process and the Department's regulations. We reject this argument. The process that the Department has afforded the Foundation since suit was filed is much more robust than—and so is materially different from—the process about which the Foundation first complained. If the Foundation were to challenge the new termination notices today, the allegations in its complaint and the Secretary's answer would be materially different. The Foundation's definition of the allegedly recurrent agency action as "grant termination[]" is too broad. And even a "likely recurrence" of the *same* action does not defeat mootness under the capable-of-repetition-yet-evading-review exception when the plaintiff will have "ample opportunity" for judicial review in due course. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). Nothing in the record suggests that the Foundation, when it completes the administrative process, will lack ample opportunity for judicial review of the legality of the new terminations.

## IV. CONCLUSION

We **GRANT** the Secretary's motion to supplement and **AFFIRM** the dismissal of the complaint for lack of jurisdiction.