# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-2365

JAMES M. KERNZ, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before BARTLEY, *Chief Judge*, and PIETSCH, GREENBERG, ALLEN, MEREDITH, TOTH, FALVEY, LAURER, and JAQUITH, *Judges*.

## O R D E R

ALLEN, *Judge*, filed the opinion of the Court. TOTH, *Judge*, filed a concurring opinion. FALVEY, *Judge*, filed a concurring opinion. BARTLEY, *Chief Judge*, filed a dissenting opinion in which GREENBERG and JAQUITH, *Judges*, joined. JAQUITH, *Judge*, filed a dissenting opinion.

Appellant James M. Kernz served the Nation honorably in the U.S. Army from July 1968 to April 1970.[1] On April 2, 2020, he filed a Notice of Appeal (NOA) specifying March 24, 2020, as the date of the Board of Veterans' Appeals (Board) decision he sought to appeal.[2] On July 1, 2020, the Secretary filed a motion to dismiss the appeal, arguing that the Board had not issued an appealable decision on March 24, 2020.[3] Rather, the Secretary explained that the Board had issued a letter to appellant on March 24, 2020. In it, the Board informed appellant that his claims were "no longer eligible for appeal" in either the modernized review system or the legacy review system and that he could request an extension of time if he disagreed with the timeliness decision in either review system.[4] The letter did not provide a right to review before a Board member or by the Court. The Secretary argued that the letter is not a Board "decision" over which we have jurisdiction and, therefore, urged us to dismiss the appeal for lack of subject matter jurisdiction.[5] The Secretary's motion to dismiss is before the Court today.

In terms of procedural history, it is surprisingly extensive given that we are dealing with a threshold motion. While we will provide additional detail in the next section, for now we briefly preview what is pending on the docket and how this matter arrived before the full Court. The Secretary's July 1, 2020, motion to dismiss was pending in the Court's Public Office until the matter was referred to a motions Judge on February 8, 2021. Shortly before the matter was assigned to a

---

[1] *See* Appellant's July 7, 2020, Response (Resp.) at Exhibit (Ex.) A.

[2] *See* Appellant's April 2, 2020, NOA.

[3] *See* Secretary's July 1, 2020, Motion (Mot.) to Dismiss at 2.

[4] *Id.* at Ex. A. We discuss this letter in more detail below.

[5] Secretary's July 1, 2020, Mot. to Dismiss at 2-3.

motions Judge, on February 5, 2021, appellant filed a Request for Class Certification and Class Action (RCA) in which he sought to represent a class of purportedly similarly situated claimants. Thereafter, the parties filed a series of responses to several Court orders. In December 2021, the motions Judge referred this matter to a panel of the Court principally to address whether the Board's March 24, 2020, letter constituted an appealable Board "decision" over which the Court has subject matter jurisdiction. The appropriate disposition of the RCA was also a matter before the panel.

On March 29, 2022, the panel assigned to this appeal heard oral argument.[6] On November 23, 2022, this case was submitted to the full Court for review pursuant to the Court's Internal Operating Procedures (IOP).[7] On June 15, 2023, the full Court held oral argument.[8] The Secretary's motion to dismiss and appellant's RCA are now ripe for decision.

As we will explain, we are unable to reach the merits of the Secretary's argument that the March 24, 2020, letter is not a "decision" over which the Court has jurisdiction. Nevertheless, we will still grant the Secretary's motion to dismiss (as well as deny appellant's RCA) because there is no longer a live case or controversy for the Court to address even if we assume (and that is all we do) that the March 24, 2020, letter is a Board "decision." We proceed as follows. First, we provide the necessary context both factually and procedurally. Second, we recount the parties' positions on the various matters before the Court. Third, we describe why it is appropriate for us to assume that we have subject matter jurisdiction over appellant's appeal and address a separate jurisdictional basis for dismissal, namely mootness. Then, we explain why this appeal is moot, including why the Court's decision in *Cerullo v. Derwinski*[9] does not preclude that result. Finally, we conclude that the pendency of appellant's RCA does not provide an exception to the mootness of this action. And because the appeal is moot—and became so before appellant filed the RCA—we also deny that request.

## I. FACTS AND PROCEDURAL HISTORY

In December 2016, a VA regional office (RO) denied appellant's claims for compensation under 38 U.S.C. § 1151 for an aneurysm, as well as service connection for depression, kidney failure, and residuals of a stroke.[10] Appellant filed a Notice of Disagreement (NOD) with that decision and the RO maintained its denial in a December 2019 Statement of the Case (SOC).[11] Although appellant's appeal began under the legacy system, in the December 2019 SOC, VA provided him the opportunity to opt into review under the Veterans Appeals Improvement and

---

[6] *Kernz v. McDonough*, U.S. Vet. App. No. 20-2365 (oral argument held Mar. 29, 2022), Oral Argument [hereinafter Panel Oral Argument], *available at* https://www.youtube.com/watch?v=dqBHabRI3Uw.

[7] *See* U.S. VET. APP. IOP VII(b)(2), X.

[8] *See Kernz v. McDonough*, U.S. Vet. App. No. 20-2365, (oral argument held June 15, 2023), Oral Argument [hereinafter Full Court Oral Argument], available at https://www.youtube.com/watch?v=6Od011aC3I4.

[9] 1 Vet.App. 195 (1991).

[10] *See* Appellant's July 7, 2020, Resp. at Ex. A (Dec. 2016 RO decision).

[11] *See id*. at Ex. B (Aug. 2017 NOD); Secretary's May 17, 2021, Resp. at Ex. A (Dec. 2019 VA Letter and SOC).

Modernization Act of 2017 (AMA).[12] On January 17, 2020, appellant filed a VA Form 10182 (Decision Review Request: Board Appeal (Notice of Disagreement)) opting for direct Board review under the AMA, selecting the evidence submission lane.[13]

On March 24, 2020, the Board sent appellant a letter informing him that his claims were "no longer eligible for appeal in the modernized review system created by the AMA" because more than 60 days had passed since he received the SOC.[14] The Board also informed appellant that he could request from the Board an extension of "time to submit a Board Appeal Request (VA Form 10182)" if he believed "there is good cause to grant a time extension."[15] Finally, the Board informed appellant that the time to appeal the SOC by submitting a VA Form 9 under the legacy system had also passed.[16] And, similarly, the Board told appellant that "the timeliness of a submitted VA Form 9 can be separately appealed in the legacy (non-modernized) review system" in accordance with the appellate rights that are attached to that timeliness decision or he could "file a request for an extension of time to file a VA Form 9 based on 'good cause[.]'"[17] On April 2, 2020, appellant filed his NOA in this matter identifying the March 24, 2020, Board letter as the "decision" he sought to appeal.

This appeal has a long history before the Court, which we recount in some detail. On June 2, 2020, appellant notified the Court, in accordance with *Solze v. Shinseki*,[18] that the Board sent him two letters dated May 7, 2020, in connection with the matter on appeal.[19] In one letter the Board informed appellant that the March 2020 Board letter had been wrongfully issued due to administrative error.[20] In the other letter, the Board told appellant that it had received his "Board Appeal request (VA Form 10182) . . . [and that his] appeal has been placed on the Evidence Submission docket[,]" and he had "90 days from the date of the Board's receipt of [his] Board Appeal (VA Form 10182) to submit new evidence."[21] In his *Solze* notice, appellant argued that the Board did not have jurisdiction to take any action in May 2020 because the March 2020 Board

---

[12] *See* Appellant's July 7, 2020, Resp. at Ex. C (Dec. 2019 VA Letter); Secretary's May 17, 2021, Resp. at Ex. A (Dec. 2019 VA Letter and SOC); *see also* P.L. 115-55, 131 Stat. 1105 (Aug. 23, 2017).

[13] *See* Appellant's July 7, 2020, Resp. at Ex. D. The 60-day deadline following the mailing of the SOC for filing a timely NOD under the AMA or a VA Form 9 under the legacy system was February 18, 2020.

[14] Secretary's July 1, 2020, Mot. to Dismiss at Ex. A. As an aside, we note that the Secretary has acknowledged that the March 2020 letter incorrectly notes the date of the VA Form 10182 and SOC as January 15, 2020, and December 12, 2019, respectively, and referred to a "dental injury" in error. *See* Secretary's May 17, 2021, Resp. at 4 n.2.

[15] Secretary's Motion to Dismiss at Ex. A.

[16] *Id.*

[17] *Id.*

[18] 26 Vet.App. 299, 301 (2013) (per curiam order) (holding that all parties to a case are required to "notify the Court of developments that could deprive the Court of jurisdiction or otherwise affect its decision").

[19] *See* Appellant's June 2, 2020, *Solze* Notice at Exs. A, B.

[20] *Id*. at Ex. A.

[21] *Id.* at Ex. B.

3

letter constituted an appealable decision over which the Court already had jurisdiction by virtue of his April 2, 2020, NOA.[22]

In July 2020, the Secretary filed the motion to dismiss that is currently before us.[23] The Secretary asserted that the Court lacks subject matter jurisdiction to review the March 2020 Board letter because it is not a final decision of the Board.[24] Appellant opposed the motion contesting the Secretary's arguments (as we will describe in more detail below) and also asserted that the May 2020 Board notices deprived him of a full 90 days in which to submit evidence in support of his appeal.[25]

On August 31, 2020, the Secretary informed the Court that in an August 28, 2020, letter, the Board notified appellant that it had extended his evidence submission window until November 26, 2020—90 days from the date of the August 28, 2020, Board letter.[26] In the August 28, 2020, letter the Board also reiterated that (1) the March 2020 letter rejecting appellant's January 17, 2020, NOD as untimely had been wrongfully issued due to an administrative error and (2) in a May 2020 letter the Board explained that appellant's appeal "was docketed at that time" and placed on the evidence submission docket.[27] The Secretary confirmed that appellant's appeal was docketed at the Board as if it had been originally deemed timely when filed on January 17, 2020.[28] The following month, appellant requested a panel decision to address whether the March 2020 Board letter is an appealable decision.[29]

In February 2021, appellant filed his RCA, which remains pending.[30] As amended, appellant seeks to represent a class of purportedly similarly situated people, specifically: "All VA benefits claimants who since the enactment of the [AMA] on August 23, 2017, have received or will receive letters from the Board denying appellate eligibility/jurisdiction and were not provided notice of appellate rights."[31]

---

[22] *See id*. at 1-2 (citing *Cerullo*, 1 Vet.App. at 200).

[23] *See* Secretary's July 1, 2020, Mot. to Dismiss at 1-4.

[24] *Id.* at 3 (first citing *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000); and then citing 38 U.S.C. § 7104(d)).

[25] *See* Appellant's July 7, 2020, Resp. at 4-5.

[26] *See* Secretary's August 31, 2020, Resp. at 2, Ex. A.

[27] *Id.* at Ex. A.

[28] *See* Secretary's June 2, 2023, Notice to the Court, Attachment (Att.) at 1.

[29] *See* Appellant's September 16, 2020, Resp. at 4-6. After appellant filed his request for panel consideration, the Court granted the Secretary's unopposed motion to stay proceedings until January 2021 for a potential joint resolution. *See* Secretary's December 20, 2021, Mot. to Stay. The parties were not able to reach a resolution.

[30] *See* Appellant's February 5, 2021, RCA at 1-24.

[31] Appellant's April 5, 2022, Notice at 1. In his February 2021 RCA, appellant had defined the class of purported similarly situated people as "[a]ll claimants who have received or will receive the same or substantially similar letters from the Board that Mr. Kernz did, *i.e.* letters denying appellate eligibility/jurisdiction under the [AMA] and Legacy (non-modernized) review system for issues timely appealed via VA Form 10182." Appellant's February 5, 2021, RCA at 2.

In March and June 2021, the Court ordered the Secretary to respond to appellant's RCA.[32] In his May 2021 response, the Secretary explained why he opposed class certification.[33] And in his August 2021 response, the Secretary explained that VA had voluntarily published a corrective notice on its website and distributed the notice to, among other places, VA facilities.[34] The notice acknowledged that the Board had learned that between February 19, 2019, and March 23, 2021, "a limited number of Veterans may have had their Board Appeal forms (VA Form 10182 [. . .]) mistakenly rejected for being untimely."[35]

In December 2021, the motions Judge who had been managing proceedings up to that point referred the matter to a panel of the Court. The panel held oral argument on March 29, 2022. Following oral argument, both parties submitted statements to the Court clarifying their respective positions. On November 23, 2022, this case was submitted to the full Court for review pursuant to part VII of the Court's IOP. In June 2023, the parties argued before the full Court.

On September 11, 2023, the Secretary filed a *Solze* notice.[36] In it, the Secretary informed the Court that the Board on September 7, 2023, remanded appellant's claims for compensation under 38 U.S.C. § 1151 for an aneurysm and kidney failure, as well as service connection for depression as secondary to an aneurysm and kidney failure. The Court will now decide the matters before it.

## II. PARTIES' ARGUMENTS

The Secretary argues that the Court lacks jurisdiction to review the March 24, 2020, Board letter because it is not a final "decision" of the Board.[37] The Secretary asserts that the letter provided appellant notice, as part of the claims processing procedure, about the timeliness of his NOD and the different options available to him under the legacy and modernized review systems.[38] Further, the Secretary asserts that the March 2020 letter is not a "'decision with respect to the benefit sought'" by the claimant, fails to contain "an order granting appropriate relief or denying relief," and does not provide a notice of appellate rights.[39] Because the Secretary believes that the

---

[32] *See* March 1, 2021, Court Order at 2; June 11, 2021, Court Order at 2.

[33] *See* Secretary's May 17, 2021, Resp. at 17-25.

[34] *See* Secretary's August 25, 2021, Resp. at 2-3.

[35] *Id.* at 3 (quoting BOARD OF VETERANS' APPEALS, http://www.bva.gov (last visited Aug. 25, 2021)).

[36] *See* Secretary's September 11, 2023, *Solze* Notice at Ex. A. On September 14, 2023, the Secretary filed an amended *Solze* notice that is substantively the same as the one filed on September 11, 2023.

[37] *See* Secretary's August 25, 2021, Resp. at 1 (citing 38 U.S.C. § 7252(a)); *see also* Secretary's May 17, 2021, Resp. at 12-13 (first citing 38 U.S.C. § 7104(d); then citing 38 C.F.R. § 20.801(b); then citing *Maggitt*, 202 F.3d at 1376; then citing *Kirkpatrick v. Nicholson*, 417 F.3d 1361, 1364 (Fed. Cir. 2005); and then citing *Tyrues v. Shinseki*, 23 Vet.App. 166, 178 (2009) (en banc), *aff'd*, 631 F.3d 1380 (Fed. Cir. 2011), *vacated*, 565 U.S. 802 (2011), *reinstated as modified en banc*, 26 Vet.App. 31 (2012) (per curiam order), *aff'd*, 732 F.3d 1351 (Fed. Cir. 2013)).

[38] Panel Oral Argument at 1:23:14-:23:48.

[39] *See* Secretary's May 17, 2021, Resp. at 12-13 (first quoting *Maggitt*, 202 F.3d at 1376; then quoting 38 U.S.C. § 7104(d); then citing 38 C.F.R. § 20.801(b); and then citing *Tyrues*, 23 Vet.App. at 178).

5

March 2020 letter is not a final or an appealable Board "decision," he contends that the Board did not run afoul of *Cerullo* by acting to correct its error concerning the timeliness of appellant's NOD.[40]

In response, appellant argues that the March 24, 2020, letter is a final "decision" of the Board over which the Court has subject matter jurisdiction.[41] He asserts that the Board letter "procedurally and substantively extinguished" his appeal because it informed him that his "appeals were no longer pending on the Board's docket and that no further action would be taken by the Board or the [RO]."[42] Appellant also argues that the March 24, 2020, letter informed him of his appellate rights when it notified him that he could "appeal the timeliness of a submitted VA Form 9 in the [l]egacy review system or request an extension of time to submit his Board appeal by showing good cause to the Board or [RO], if he disagreed with the Board's letter."[43] He further contends that the Board's correction of its error was void under *Cerullo* because he had filed his NOA with the Court about that issue before the Board acted.[44] In terms of relief being sought, appellant's counsel explained during full Court oral argument that he would like the Court "to remand for the Board to comply with the requirements of [38 C.F.R.] § 20.104(c), which would include docketing under the appropriate authority and clarifying the correct 90 days or even assigning a new 90-day period so that Mr. Kernz can understand the precise start and stop dates" of the evidence submission window.[45]

In the alternative, the Secretary argues that the appeal is moot.[46] He contends that VA cured its error concerning the timeliness of appellant's administrative appeal when the Board correctly docketed his case and the Board afforded appellant an additional 90 days in which to submit evidence.[47] Additionally, the Secretary informed the Court that, as a result of this case, the Board amended its timeliness notice letter template and VA now uses a revised version of the letter so other claimants will not face the issues appellant did when the Board issued the version of the timeliness letter it was using in March 2020 to appellant.[48] Appellant counters that the appeal is

---

[40] Secretary's July 1, 2020, Mot. to Dismiss at 3; *see* Full Court Oral Argument at 18:00-:34.

[41] *See* Appellant's July 7, 2020, Resp. at 3.

[42] *See* Appellant's May 26, 2021, Resp. at 3.

[43] *See* Appellant's September 16, 2020, Resp. at 3.

[44] Full Court Oral Argument at 1:12:00-:06, 1:16:04-:16:50.

[45] *Id.* at 1:17:07-:17:25; *see id.* at 1:07:01-:10:30.

[46] *See* Secretary's July 1, 2020, Mot. to Dismiss at 3-4. Our dissenting colleague, Judge Jaquith, chastises our characterization of the Secretary's argument. He states that the Secretary argues that "the Board had cured its error(s), but never mentioned mootness." *Post* at 24. We stand by our characterization, but it fundamentally doesn't matter how one characterizes the Secretary's argument. Having adopted the requirements of Article III of the U.S. Constitution, the Court has an independent duty to ensure that there is a live case or controversy in this appeal, even if the parties don't raise the matter. *See Philbrook v. Wilkie*, 32 Vet.App. 342, 345 (2020) (quoting *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019)), *rev'd on other grounds*, 15 F.4th 1117 (Fed. Cir. 2021); *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019) (per curiam order).

[47] *See* Secretary's August 31, 2020, Resp. at 2.

[48] *See* Secretary's April 4, 2022, Resp. at 1-2, Ex. A.

not moot because he continues to experience harm resulting from the Board's corrective actions. During the full Court oral argument, appellant's counsel explained that it is unclear whether the Board will consider evidence that he submitted before it issued the August 2020 letter that provided him with a new 90-day evidence submission window.[49]

Finally, with respect to the RCA, appellant argues that the Board's erroneous notification letter "reflects a systematic practice by the Board to deny appellate review for properly filed appeals without providing adequate reasons or bases for doing so" and without adequate notice to do so.[50] He urges the Court to grant the RCA. The Secretary asserts that the Court should deny the RCA because it would be administratively unfeasible to determine the class members and, in any event, appellant has not demonstrated that the proposed class satisfies the requirements for certification under the applicable legal standards.[51]

## III. ANALYSIS

### *A. Jurisdictional Sequencing*

We begin with a question perhaps tailored for a procedural aficionado: Is there a particular order in which we must proceed in terms of the different jurisdictional questions this case presents? After all, a centerpiece of the parties' dispute is whether the Board's March 24, 2020, letter is a "decision" over which we have subject matter jurisdiction. At the same time, developments after appellant filed his NOA have raised issues about whether there remains a live case or controversy for the Court to address. In other words, we have serious concerns about whether this case is moot.

Do we need to address these questions—mootness and subject matter jurisdiction—in a particular order? One might instinctively conclude that we must first assure ourselves that we have subject matter jurisdiction before we do anything else. After all, in *Steel Co. v. Citizens for a Better Environment*, the Supreme Court held that federal courts are required to ensure that they have jurisdiction over the subject matter before considering the merits of a case.[52] And in *Hayre v. Principi*, we held that "[j]urisdiction may not be 'assumed,' 'conceded,' or 'implied,' and cannot be bestowed on a court by the court itself, or any other court."[53] In the same vein, the Court has held repeatedly that "we must always assure ourselves that we have jurisdiction to act."[54]

So, there is no debate that subject matter jurisdiction is a foundational question in federal court litigation. However, the Supreme Court has also recognized that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'"[55] The key is

---

[49] Full Court Oral Argument at 1:04:00-:06:38, 1:07:01-:10:30.

[50] Appellant's February 5, 2021, RCA at 3; *see* Full Court Oral Argument at 1:32:50-:34:05.

[51] Full Court Oral Argument at 52:08-53:07.

[52] 523 U.S. 83, 94 (1998).

[53] 15 Vet.App. 48, 51 (2001), *aff'd*, 78 F. App'x 120 (Fed. Cir. 2003).

[54] *Freund v. McDonough*, 35 Vet.App. 466, 479 (2022); *see Foster v. McDonough*, 34 Vet.App. 338, 351 (2021); *Demery*, 30 Vet.App. at 434.

[55] *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).

that a federal court may not proceed to the *merits* of a case without assuring itself that it has subject matter jurisdiction, but it may dismiss a case based on a jurisdictional (or quasi-jurisdictional) ground other than lack of *subject matter* jurisdiction. For example, in *Ruhrgas*, the Supreme Court held that "[w]hile *Steel Co.* reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues."[56] In other words, a court can dismiss on non-merits grounds, like personal jurisdiction that was at issue in *Ruhrgas*, without violating the principles established in *Steel Co.* dealing with the importance of subject matter jurisdiction.

Additionally, in *Sinochem*, the Supreme Court held that a federal court did not need to first establish subject matter jurisdiction (or even personal jurisdiction) if it found that the matter should be addressed in another, more appropriate, court or forum under the doctrine of *forum non conveniens*.[57] The Supreme Court reaffirmed its ruling in *Ruhrgas* and concluded that, because dismissal based on *forum non conveniens* principles is a non-merits ground for resolving the case, there was no requirement to first establish that there was subject matter jurisdiction in the case at hand: "[W]here subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the Court properly takes the less burdensome course."[58]

Applying the Supreme Court's holdings in *Ruhrgas* and *Sinochem*, the Federal Circuit has recognized that standing and mootness are also threshold jurisdictional issues that a court may properly address before resolving questions about subject matter jurisdiction.[59] Particularly, in *Kaw Nation*, the Federal Circuit considered an appeal from a decision by the Department of the Interior Board of Contract Appeals involving an intratribal dispute concerning the allocation of funds pursuant to a certain tribal contract. The Secretary of the Interior argued that the appeal should be dismissed as moot because the government agency had "paid the disputed amounts and will not seek to recover them."[60] The Secretary also requested vacatur of the Board of Contract Appeals' decision. One argument that appellant, Kaw Nation, raised was that the Board of Contract Appeals lacked jurisdiction to consider the initial dispute, and while there may no longer be a live case or controversy, the Court must decide the jurisdictional issues before reaching the question of mootness.[61] The Federal Circuit relied on *Ruhrgas* and explained that "we may address jurisdictional issues in any order."[62] But the Federal Circuit went even further, holding that "where, as here, the underlying controversy is clearly moot, the preferred course is to decide mootness,

---

[56] *Ruhrgas*, 526 U.S. at 584.

[57] *Sinochem*, 549 U.S. at 426.

[58] *Id.* at 436.

[59] *See Kaw Nation v. Norton*, 405 F.3d 1317, 1323 (Fed. Cir. 2005); *Myers Investigative & Sec. Servs. Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (noting that standing, like mootness, is a threshold jurisdictional issue, and deciding the issue of standing without reaching the mootness issue first), *abrogation on other grounds recognized by CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions.'" (quoting *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920))).

[60] *Kaw Nation*, 405 F.3d at 1318.

[61] *Id.* at 1322.

[62] *Id.* at 1323.

before reaching difficult questions more closely tied to the merits of the underlying controversy, such as subject matter jurisdiction."[63] Thus, the Federal Circuit declined to address the subject matter jurisdiction issue and dismissed the appeal before it because the case had "'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'"[64]

Given the facts before us, and as we discuss next, we conclude that it is advisable for us to consider mootness as a threshold matter. Just as the Federal Circuit recognized in *Kaw Nation*, if we do not address whether a live controversy remains, we risk rendering what amounts to an advisory opinion.[65] So, while we acknowledge that addressing the subject matter jurisdiction question would be useful as a practical matter, we shouldn't do so if there is no actual controversy remaining between the parties. As we explain next, there is not.

### B. This Appeal is Moot

This Court has adopted the Article III case-or-controversy requirements, which include mootness.[66] The inquiry about mootness is straightforward. As we've held, "the Court has an independent duty to ensure that a case or controversy still exists. If an appellant receives the benefit or relief sought before the Court reaches a decision, the case becomes moot and the appeal must be dismissed."[67]

Recall that the Board's March 24, 2020, letter rejected appellant's January 17, 2020, NOD as untimely.[68] Appellant appealed that determination to the Court, meaning that the dispute—the controversy—between the parties focused on the timeliness of appellant's January 17, 2020, NOD. That controversy was resolved in May 2020 when the Board sent appellant a letter in which it acknowledged that appellant's January 17, 2020, NOD was, in fact, timely.[69] The Board also informed appellant that his appeal had been placed on the AMA evidence submission docket and he had 90 days from the Board's receipt of his VA Form 10182 to submit new evidence, a period that was later amended to allow appellant the full 90 days within which to submit evidence.[70] The Board's May 2020 actions afforded appellant all the relief the Court could order in this appeal. During panel oral argument in this matter, the Secretary stated that appellant "has received a remedy here that puts him in the place where he would [have been] had we treated his [VA Form]

---

[63] *Id.*

[64] *Id.* (quoting *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (citations omitted)).

[65] *See id*.

[66] *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990).

[67] *Philbrook*, 32 Vet.App. at 345 (citation omitted); *see Monk v. Wilkie*, 32 Vet.App. 87, 97 (2019) (en banc order), *aff'd in part, dismissed in part sub nom. Monk v. Tran*, 843 F. App'x 275 (Fed. Cir. 2021); *Godsey v. Wilkie*, 31 Vet.App. 207, 218 (2019) (per curiam order); *Thomas v. Brown*, 9 Vet.App. 269, 270 (1996) (per curiam order); *Mokal*, 1 Vet.App. at 15.

[68] *See* Secretary's July 1, 2020, Mot. to Dismiss at Ex. A.

[69] *See* Appellant's June 2, 2020, *Solze* Notice at Ex. A (May 2020 Board Letter). In the next section of this order, we explain why it is appropriate for us to consider the Board's actions in May 2020 (and thereafter).

[70] *See* Appellant's June 2, 2020, *Solze* Notice at Ex. B (May 2020 Board Letter); Secretary's August 31, 2020, Resp. at Ex. A (Aug. 2020 Board Letter).

10182 as timely initially, even the docketing position at the Board."[71] And in a June 2, 2023, filing to the Court, the Secretary submitted a declaration from a Deputy Vice Chairman of the Board, confirming that appellant's appeal "was received by the Board on January 17, 2020, and was docketed based on that date."[72] Finally, during full Court oral argument, the Secretary reiterated and confirmed that appellant's appeal was pending before the Board in docket order based on the January 17, 2020, docketing date.[73]

To reiterate, appellant sought to have the Court hold that his January 17, 2020, NOD was timely. The Board's May 2020 actions provided that precise relief. His appeal was assigned the docket position to which appellant was entitled given the January 17, 2020, filing date and, as mentioned, the Board on September 7, 2023, acted on his appeal. The only substantive issue on appeal to the Court—whether appellant's VA Form 10182 was timely—has been fully resolved. Therefore, we conclude that the appeal should be dismissed as moot. As the Federal Circuit concluded in *Kaw Nation*, this appeal has "'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'"[74]

We are not persuaded by appellant's attempt to avoid the clear mootness of this appeal.[75] To begin with, at one point appellant appeared to agree that the case was moot, although confusingly he also seemed to argue that the Court should issue a precedential opinion nonetheless. In his September 2020 response to a Court order, appellant stated that "his continued opposition to the Secretary's motion to dismiss is only limited to the Secretary's position that the Board's actions do not constitute a decision."[76] He further stated that he "is only pursuing this appeal to that extent and acknowledges that should the Court issue a precedential decision finding the Board's actions constituted a decision[,] any further proceeding in the case would become moot by the Court's case or controversy requirement."[77] Appellant did not argue that there was any controversy remaining about the timeliness of his January 2020 NOD. Instead, appellant argued that there was a controversy remaining about whether the Board's March 24, 2020, letter was an appealable decision. But whether the March 2020 letter was a "decision" only matters if there is a controversy to resolve on the underlying appeal. And there is no longer a controversy because everyone agrees that appellant's January 17, 2020, NOD was, in fact, timely.

When questioned about the September 2020 response during full Court oral argument, appellant's counsel seemed to backtrack. For the first time, appellant's counsel suggested that there is some type of harm to appellant that the Court could redress based on the Board's post-March 2020 actions dealing with appellant's right to submit evidence during the 90-day window the AMA provides in the evidence submission lane before the Board. Appellant asserted that there is

[71] Panel Oral Argument at 30:29-:42.

[72] Secretary's June 2, 2023, Resp., Att. at 2.

[73] *See* Full Court Oral Argument at 12:00-13:23; *see also id.* at 15:54-17:26.

[74] *Kaw Nation*, 405 F.3d at 1323 (quoting *Princeton Univ.*, 455 U.S. at 103 (citations omitted)).

[75] We focus here on appellant's arguments about the mootness of his individual claim. We address the potential implications of the pending RCA on mootness below.

[76] Appellant's Sept. 16, 2020, Resp. at 4.

[77] *Id.*

"confusion" over whether the evidence he submitted during one of the windows the Board provided will be considered when his administrative appeal is adjudicated on the merits.[78] Although this supposed "harm" seemed the product of nothing more than speculation, we now know that the Board in its September 7, 2023, remand did not consider that evidence.[79] But there is no confusion. Regardless whether the Board was correct in how it treated the evidence submitted after the May 2020 letter, appellant still cannot save this appeal, which again pertains solely to the timeliness of his January 2020 NOD, from being moot. Any harm from appellant's confusion over the correct 90-day window to submit evidence or from the Board's subsequent determination not to consider the evidence submitted pertains to the merits of his claims, not the timeliness of his appeal, and remains speculative.

In conclusion, an argument based on purely speculative future harm is not ripe for review.[80] The bottom line is that appellant has received all the relief the Court could have awarded if we had considered his appeal on the merits. That makes this case moot because there is no live controversy remaining between the parties. And that conclusion does not change based on the specter of some future "harm."[81] Finally, even if all this were not so—that is, that the appeal was moot when the Board accepted appellant's NOD as timely—the appeal must be moot given that the Board has actually acted on the issues underlying the administrative matter appellant wanted the Court to consider.[82]

## C. The Board's Corrective Actions

We have just explained why appellant's individual appeal is moot. But there is an antecedent question we must explore: may we consider what the Board did *after* appellant filed his NOA commencing this appeal? Appellant argues that we may not consider those actions because the filing of his NOA deprived the Board of the power to act as it did.[83] In appellant's view, all the Board's post-NOA actions are void and we must proceed as if they did not exist.[84] This argument requires us to consider one of the earliest precedents from our Court, *Cerullo v. Derwinski*.[85]

In *Cerullo*, the Secretary sought to dismiss an appeal after the Board Chairman sua sponte ordered reconsideration of a Board decision that the appellants had already appealed (by timely

---

[78] *See* Full Court Oral Argument at 1:04:00-:10:30.

[79] *See* Secretary's September 11, 2023, *Solze* Notice at Ex. A (remanding all appellant's claims due to a pre-decisional duty-to-assist error and ordering additional development).

[80] *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (internal quotations omitted))).

[81] *See Polovick v. Nicholson*, 24 Vet.App. 257, 258 (2006) (per curiam order) (holding that the Court will not address hypothetical situations because they are not ripe).

[82] *See* Secretary's September 11, 2023, *Solze* Notice at Ex. A.

[83] *See* Full Court Oral Argument at 1:16:04-:17:40.

[84] *See id.*

[85] 1 Vet.App. at 195.

filing an NOA) to this Court.[86] In rejecting the Secretary's motion, we held that "any attempt by the [Board] or the [Board] Chairman to order reconsideration of a [Board] decision after an NOA has been timely filed with this Court is null and void unless the Court first orders a remand" in accordance with a certain procedure focused on obtaining the Court's permission.[87] The Court was concerned with VA's "unrestricted ability" to "delay the progression of a particular claimant's case if it were advantageous to the agency."[88] As we commented, "[t]he Secretary's position would give [VA] the power to defeat meaningful judicial review and thereby subvert the intention of Congress in enacting the Veterans' Judicial Review Act."[89]

For at least two reasons, it's not surprising that the *Cerullo* Court ruled as it did. First, the decision came in the earliest moments of judicial review of VA actions, a time when the Court was particularly concerned with the institutional goal of establishing its authority as an independent judicial body. And second, *Cerullo* also recognized a general, largely unremarkable, principle in federal appellate practice, that "[o]nce an appellate body takes jurisdiction over a claim, the lower tribunal may not consider the same issues."[90]

But *Cerullo* is unlike the situation we confront today. We begin with the obvious point that the context is different in important respects. First, in *Cerullo* the Board Chairman sua sponte ordered reconsideration of the Board decisions at issue, whereas here, the Board, through letters signed by the Deputy Vice Chairman, recognized a distinct clear error. Moreover, in *Cerullo* the Court could not know whether the Board Chairman's reconsideration would resolve the controversy in a way that was favorable to appellants, but here, we know that the Board corrected its clear error and afforded appellant all the relief that the Court could have provided in a contested litigation. In addition, in *Cerullo*, the Court was concerned with finality and, ultimately, VA frustrating our review by making a case non-final via reconsideration without actually resolving the issue on appeal. Here, the Board did not attempt to modify, vacate, rescind, or alter the March 2020 letter in any way. Instead, the Board issued additional letters to correct its mistake, leaving the March 2020 letter intact for whatever that may be worth. In other words, if we assume that the March 2020 letter is a final Board decision, the Board's subsequent actions did not render that assumed decision non-final.[91]

---

[86] In *Cerullo*, the Court consolidated the appeals of six appellants: Henry B. Carter, David A. Cerullo, Edward M. Farmer, Jr., Ralph Meister, Harold E. St. Cyr, and Robert E. VanDee. 1 Vet.App. at 196.

[87] *Id.* The Court in *Cerullo* recognized that administrative action could serve as a way to resolve a case quickly and adopted a procedure where, after an NOA has been filed, the Secretary can seek leave from the Court to confess errors or to obtain alternative joint resolution or perhaps even to correct errors. *Id.* at 200-01.

[88] *Id.* at 199.

[89] *Id.* at 198.

[90] *Id.* at 197. We have consistently recognized this basic point of appellate procedure. *See, e.g.*, *Monk*, 32 Vet.App. at 94 ("The Supreme Court's [caselaw] reflects the principle that a case should not be in two places at once with respect to the same issue."); *Wachter v. Brown*, 7 Vet.App. 396, 397 (1995) (per curiam order) ("A party cannot be in 'two places at the same time.'" (quoting *Bellsouth Corp. v. F.C.C.*, 17 F.3d 1487, 1489 (D.C. Cir. 1994))).

[91] We stress again that we are only assuming that the March 2020 letter constitutes a Board "decision" over which we would have subject matter jurisdiction. Therefore, it follows that we also only assume that the Board's letters in May 2020 have some sort of legal effect, that is, beyond mooting the controversy before us by providing appellant all the relief he sought in this appeal.

Perhaps if these differences were all there was, *Cerullo* would stand as the impediment appellant argues it is. But there is a more fundamental distinction between *Cerullo* and appellant's case that ultimately carries the day. As we have explained, what the Board did through its May 2020 letters to appellant is to fully resolve the controversy between the parties. In other words, the overall controversy in this case centers on the Board's acceptance of appellant's NOD as timely. Now that the Board has done that very thing—accepted appellant's NOD as timely—there is simply no controversy left for the Court to review. The Court could do no more than what the Board has already done. We are not at liberty to ignore the reality that there is no dispute to which we can legitimately apply judicial power to resolve. Courts are undoubtedly powerful entities in our constitutional structure. But that power is constrained by the requirement that there be a live controversy between adversary parties.[92] So, the situation we confront today is not so much about *Cerullo*'s unremarkable proposition that a case can't be in two places at once. Rather, it is about the fundamental need for there to be an actual controversy for the Court to resolve. Here, because the Board acted to resolve the controversy, all that is left are abstract questions untethered to a live, concrete dispute for which the Court could provide relief.

The principle *Cerullo* stands for, about a case not being in two places at the same time and the distinct requirement that there remain a live case or controversy for a court to resolve at all times during a case,[93] is one that other courts have recognized.[94] An excellent example of this important distinction comes from the Seventh Circuit's decision in *Doctors Nursing & Rehabilitation Center v. Sebelius*.[95] In *Doctors Nursing*, a nursing home sued the Secretary of Health and Human Services in district court, after exhausting its administrative remedies, alleging underpayment for certain services. While the agency appeal was before the federal court, the agency decided to reopen the administrative proceedings because it found that "the nursing home was entitled to additional process."[96] To be clear, the agency took action to reconsider the nursing home's claims without first seeking permission from the court. Before agency reconsideration was completed and before the parties knew whether the nursing home would obtain the relief it sought in the district court, the agency filed a motion to dismiss, alleging that the district court lacked subject matter jurisdiction because there was no longer a final administrative decision for the court to review.[97] The district court dismissed the matter and the nursing home appealed to the Seventh Circuit arguing "that the agency may not divest the courts of jurisdiction simply by unilaterally

---

[92] *See, e.g.*, *Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) ("[T]he Court will not ordinarily consider additional allegations of error that have been rendered moot . . . or that would require the Court to issue an advisory opinion."); *see also Kaw Nation*, 405 F.3d at 1323 (declining to address the jurisdictional question raised "in light of the undisputed fact that the underlying . . . claim [was] moot, and the case ha[d] 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law'" (quoting *Princeton Univ.*, 455 U.S. at 103 (citations omitted))).

[93] *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) ("A case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts." (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013))).

[94] *See, e.g.*, *Drs. Nursing & Rehab. Ctr. v. Sebelius*, 613 F.3d 672 (7th Cir. 2010); *Kramer v. Gates*, 481 F.3d 788 (D.C. Cir. 2007); *Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008).

[95] 613 F.3d at 672.

[96] *Id.* at 675.

[97] *Id.*

reopening its proceeding after the lawsuit was filed."[98] The Seventh Circuit agreed with the nursing home in that respect, holding that under the relevant statute, "the agency may not divest the federal courts of jurisdiction by unilaterally reopening its administrative proceedings."[99] The court contrasted the case from one of its earlier decisions, *Gao v. Gonzales*,[100] in which the petitioner appealed an agency's refusal to reopen his case but while the appeal was before the court, the agency sua sponte reopened the petitioner's case. The court in *Gao* concluded that it lacked jurisdiction to consider the matter under these factual circumstances because there was no more relief that it could have awarded the petitioner.[101] In other words, the agency in *Gao* resolved the only live controversy before the court—the reopening of the petitioner's case.

Writing for the Seventh Circuit in *Doctors Nursing*, Judge Manion carefully explained the distinction between the principle of appellate procedure that filing an appeal with a court prevents an agency from acting (the same principle *Cerullo* has come to stand for) and the separate requirement that there remain a live case or controversy between the parties.[102] The Seventh Circuit stated that the established rule providing that "when one tribunal properly takes a case on appeal, the inferior tribunal [(like an agency)] transfers authority over the case,"[103] does not control when "there was no more relief that the court could have granted once the agency itself decided to give petitioner the very thing he was asking of the court."[104] And so, the issue in *Doctors Nursing* implicated what we think of as the *Cerullo* rule while the agency action in *Gao* really was about mootness. Simply put, mootness matters despite the distinct rule that we associate with *Cerullo*.

As we alluded to earlier, the Seventh Circuit is not an outlier among federal circuit courts in recognizing the distinction we highlight today. It simply is not a novel concept.[105] And while we have addressed *Cerullo*-related issues over the years in precedential decisions,[106] as has the Federal Circuit,[107] none of those cases involved situations in which an agency provided complete

[98] *Id.* at 675-76.

[99] *Id.* at 677.

[100] 464 F.3d 728, 729 (7th Cir. 2006).

[101] *Id.* at 729-30; *see Drs. Nursing*, 613 F.3d at 678 (distinguishing *Gao*, 464 F.3d 728).

[102] *Drs. Nursing*, 613 F.3d at 678.

[103] *Id.* at 677 (citing *Gao*, 464 F.3d at 729).

[104] *Id.* at 678.

[105] *See supra* note 94.

[106] *See, e.g.*, *Encarnacion v. McDonough*, 36 Vet.App. 194, 202 (2023); *Young v. Shinseki*, 25 Vet.App. 201, 204 (2012) (en banc order) (per curiam); *Lauigan v. Brown*, 5 Vet.App. 358, 359 (1993) (per curiam order).

[107] *See Zenith Elecs. Corp. v. United States*, 884 F.2d 556, 561 (Fed. Cir. 1989). Our dissenting colleagues insist that our discussion of Seventh Circuit cases is unnecessary as the Federal Circuit in *Zenith* has said all that we need to hear—that once a matter is before a court for review, an agency must first seek permission from that reviewing court before making any corrective actions, even those that are clerical in nature. *Id.* While we acknowledge that in *Lauigan*, we adopted the Federal Circuit's reasoning in *Zenith* to conclude that the Board cannot "correct a minor, non-substantive, error in its decision, after appellant has filed an NOA with the Court," *Lauigan*, 5 Vet.App. at 359, neither *Zenith* nor *Lauigan* addressed the situation we have here today—the effect of agency corrective action that provides complete relief to an appellant, leaving the reviewing court nothing that it could do. In other words, neither *Zenith* nor *Lauigan* considered a situation in which the agency's actions mooted the case or controversy at issue.

relief to an appellant. But the Court did rely on this distinction in a single judge order issued by Judge Pietsch.[108] Specifically, Judge Pietsch dismissed an appeal as moot because there was no longer a live case or controversy after the Board took corrective action and placed appellant's appeal on its docket.[109] Judge Pietsch explained that the Board's action provided appellant with all of the relief that he sought and "it is now impossible for the Court to grant 'any effectual relief what[so]ever' . . . in the event that he prevails in his appeal."[110] That is precisely the issue we face today. While we recognize that this order is nonprecedential and, even if it were not, would not bind the en banc Court in any event, we find its reasoning highly persuasive and have adopted it here.

We conclude that the matter before us today is best analyzed as a mootness case at bottom. Just to briefly reiterate the facts: the Board refused to docket appellant's appeal because it thought it was untimely; appellant appealed to this Court only seeking to have his appeal properly docketed at the Board; soon after he filed his NOA the Board took corrective actions and docketed the appeal to the position appellant was entitled to given the January 17, 2020, filing date; and the Board acted on the appellant's appeal. So, "there [is] no more relief that the court could . . . [grant because] the agency itself decided to give [appellant] the very thing he was asking of the court."[111] And while we agree that the Board erred when it failed to seek permission to take corrective action from the Court as *Cerullo* contemplates, we will not disturb the Board's actions when the Board's failure to follow the procedure announced in *Cerullo* was not prejudicial because it afforded an appellant with all the relief he could have obtained from the Court.[112]

We emphasize that *Cerullo* remains good law and continues to serve a critical role in our appellate procedure—to prevent the Board from interfering with our jurisdiction. Nothing in this order should be read as undermining that important, indeed bedrock, institutional principle. And we also reiterate that, even when the goal is to award an appellant with all the relief he or she could obtain before the Court, the Board (likely acting though the VA General Counsel) should seek the Court's permission as *Cerullo* requires. However, the Court cannot ignore the distinct legal requirement that there must always be a live controversy between the parties for the Court to maintain jurisdiction.[113] Therefore, we hold that if the Board acts on a matter that has already been

---

[108] *See Perciavalle v. McDonough*, No. 22-0425, 2022 WL 3753249 (Vet. App. Aug. 30, 2022).

[109] *Id.* For completeness sake, we note that appellant filed a motion for reconsideration in this appeal that is being held in abeyance for a decision in *Kernz*.

[110] *Id.* at *5 (quoting *Philbrook*, 32 Vet.App. at 345).

[111] *Drs. Nursing*, 613 F.3d at 678; *see* Full Court Oral Argument at 1:08:28-:09:20.

[112] *See, e.g.*, *Anchor Line Ltd. v. Fed. Maritime Comm'n*, 299 F.2d 124, 125 (D.C. Cir. 1962) ("It is true that when an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency. We do not condone the failure to follow that procedure. But since this failure was not prejudicial in the circumstances of the present case, we do not disturb the Commission's action in reopening the proceedings."); *Encarnacion*, 36 Vet.App. at 216-19 (Falvey, J., dissenting) (maintaining that *Cerullo* did not apply because the Court lacked jurisdiction over the Board decision the chairman sought to reconsider and that reading *Cerullo* "as prohibiting the agency from acting on any issue that may relate to any issue before the Court is too broad and legally incorrect"). *But see Encarnacion*, 36 Vet.App. at 202 (deeming a Board finding that a purported NOD constituted a motion for reconsideration was "of no legal consequence" given the appeal pending at the Court, but explaining that the Board was "*now* permitted" to make the same determination).

[113] *See Sanchez-Gomez*, 138 S. Ct. at 1537; *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("'As long as the

15

appealed to this Court such that the claimant obtains *all* the relief he or she could receive from the Court, there is no longer a live case or controversy for the Court to resolve. And when that is the situation, the Court must dismiss the appeal as moot.[114]

We recognize that our dissenting colleagues have a fundamentally different conception of this case. We respect their sincerely held views. However, our dissenting colleagues are simply wrong when they argue that our decision endorses agency interference with judicial review and infringes upon a veteran's right to "a full and meaningful opportunity to be heard on all issues that have been properly appealed to us."[115] We have repeatedly stated that *Cerullo* stands, and we mean it. And we have recognized that the Board here erred when it failed to seek permission from the Court before taking its corrective action. At the same time, however, we cannot ignore that there is no longer a live case or controversy between the parties. So, all we have done is recognize what amounts to a very specific and narrow exception to the *Cerullo* principle—that is, if an agency takes corrective action, even without permission from the reviewing court, and that action provides an appellant complete relief such that it is impossible for the reviewing court to provide appellant with anything more,[116] the Court no longer has the power to engage in judicial review. The hyperbolic suggestion that we have somehow abdicated our responsibility to afford veterans the judicial review Congress put into place just has no basis in the reality of our decision.

### D. The RCA and the Inherently Transitory Exception to Mootness

Although mootness generally bars federal courts from reaching the merits of a case, there are certain narrow exceptions to that principle. As relevant here, the Supreme Court has recognized an exception to mootness in situations in which a class representative's personal interest may have become moot but putative class members have live claims. Courts have referred to this doctrine in class actions as the "inherently transitory" exception to mootness.[117] In discussing this limited exception to mootness, we explained that "a plaintiff in a civil action who brings a purported class action presents two separate issues for judicial resolution: (1) 'the claim on the merits' and (2) 'the claim that [the plaintiff] is entitled to represent [as] a class.'"[118] Stated differently, "a class

---

parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" (quoting *Knox v. Serv. Emps. Int'l. Union*, 567 U.S. 298, 307-08 (2012))); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) ("If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990))).

[114] We don't believe our holding today is in conflict with the Court's recent decision in *Encarnacion*. *See* 36 Vet.App. at 194. However, to the extent that any part of *Encarnacion* does conflict with our decision today, it is hereby overruled.

[115] *Post* at 23 (Bartley, C.J., dissenting); *see post* at 23-28 (Jaquith, J., dissenting).

[116] This includes consideration of alternative paths, like a class action, that could prevent a case or controversy from becoming moot. As we explain in Section D below, appellant's case became moot well before a class action was likely to happen.

[117] *Freund*, 35 Vet.App. at 484.

[118] *Id*. (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1089 (9th Cir. 2011) (alterations in original)).

representative may have [his or] her claim become moot, but the claim concerning the class may remain" a live controversy.[119]

We have considered the inherently transitory exception to mootness in several opinions under our relatively new class action authority.[120] In *Freund*, we explained that an inherently transitory claim is one that is "unavoidably time-sensitive" and "acutely susceptible to mootness" because a "trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires."[121] And in *Godsey*, we explained that the inherently transitory exception to mootness *could possibly allow* us to reach the merits of a petition on a class basis *if* we could certify a class.[122] In other words, if a class is not appropriate, an exception to mootness based on the existence of a class is irrelevant.

So, we know that the pendency of a class action request can, under certain circumstances, allow a court to consider the merits of a case despite the mootness of the individual class representative's claim. Colloquially speaking, the inherently transitory exception can prevent a case from dying due to mootness. The problem appellant has in terms of invoking the exception here is that at the time he sought class certification by filing the RCA this appeal was *already moot*. So, he essentially asks us to allow the exception to revive a case that is already dead. The exception can't do that.

In May 2020, the Board informed appellant that his appeal had been placed on the Board's docket as if his NOD had been deemed timely filed on January 17, 2020.[123] It was not until February 5, 2021, that appellant requested class certification—nearly 9 months after the Board's May 2020 letter providing appellant with the relief that we have determined moots the issue on appeal. The inherently transitory exception is not an option for appellant here because his case became moot *before* he filed any request for class certification.[124]

Our holding that an exception to mootness cannot revive a "dead" case finds support in the Federal Circuit's recent nonprecedential decision in *Dolbin v. McDonough*.[125] In *Dolbin*, the Federal Circuit addressed our Court's decision denying a petition involving the advancement of Mr. Dolbin's claims on the Board's docket and dismissal of Mr. Dolbin's class certification motion. While the matter was pending at the Federal Circuit, the Board issued a decision on Mr. Dolbin's claims (the same claims he was seeking to advance on the Board's docket before our Court). The Federal Circuit explained that the appeal was moot because there was no additional relief it could

---

[119] *Id.*

[120] *See id.*; *Godsey*, 31 Vet.App. at 219.

[121] *Freund*, 35 Vet.App. at 484 (internal citations omitted).

[122] *Godsey*, 31 Vet.App. at 219.

[123] The Secretary confirmed that the Board docketed appellant's appeal as if it had originally been accepted as timely filed on January 17, 2020. Secretary's June 2, 2023, Notice to the Court, Att. at 1.

[124] Our dissenting colleague Judge Jaquith focuses in large part on the interests of veterans other than Mr. Kernz. He insists in his separate dissent that we address "the mess the Board created" and rule on the merits question and subsequent request for class certification. *Post* at 27. However, to do what Judge Jaquith suggests would require us to issue an impermissible advisory opinion because there is no live case or controversy at issue here. *See Quirin*, 22 Vet.App. at 395.

[125] No. 21-2373, 2023 WL 2981495 (Fed. Cir. 2023) (nonprecedential).

provide to Mr. Dolbin.[126] And with regard to the motion for class certification, the Federal Circuit determined that, because the appeal was moot, the pending motion for class certification is also moot and no exceptions to mootness applied.[127] The Federal Circuit relied on Supreme Court precedent to support its decision, primarily *Genesis Healthcare Corp. v. Symczyk*,[128] which held that typically a class action is moot if the named plaintiff's claim becomes moot before class certification.[129] So it is possible to read *Dolbin* as indicating that, even if a request for class certification is pending when the individual claim becomes moot, there is no exception to mootness so long as the class request has not yet been acted on. We need not go so far here because, as we explained, appellant filed his RCA long after his individual claim was moot. We leave for another day any further exploration of what the rule the Federal Circuit discussed in *Dolbin* might mean.

## IV. CONCLUSION

For the reasons we have explained, we conclude that this appeal is moot because there is no longer a live case or controversy between the parties and that there are no exceptions to mootness based on appellant's pending RCA that would support the Court proceeding to address the merits. Therefore, we must dismiss this appeal and deny the RCA. To be clear, because this appeal is moot, we do not reach the question whether the Board's March 24, 2020, letter is a "decision" in terms of our subject matter jurisdiction. We express no view on that jurisdictional question.

Upon consideration of the foregoing, it is

ORDERED that appellant's February 5, 2021, Request for Class Certification is denied. It is further

ORDERED that the Secretary's July 1, 2020, Opposed Motion to Dismiss is granted. And it is further

ORDERED that this appeal is DISMISSED as moot.

DATED: October 4, 2023

TOTH, *Judge*, concurring: I join the majority opinion because it correctly explains why the Board's action—correcting a clear procedural error in a manner wholly favorable to the appellant—moots this appeal and why *Cerullo* doesn't render this action ineffectual. *Ante* at 11–12. I write separately to emphasize that, to moot a case, the Board must first have authority to take remedial action, which it did in these novel circumstances.

---

[126] *Id.* at *2.

[127] *Id.* at *2-3.

[128] 569 U.S. at 73-74.

[129] *Dolbin*, 2023 WL 2981495, at *3.

Coupled with mootness, the decisive factor in the cases discussed by the majority is whether Congress authorized agencies to take the remedial action they did. *Doctors Nursing* declined to dismiss for mootness because the relevant statute limited HHS's ability to reopen and revise prior determinations after a petition for judicial review had been filed. 613 F.3d at 677. *Gao*, by contrast, dismissed a petition as moot because the relevant statute allowed the Board of Immigration Appeals to reopen proceedings even after judicial review of the underlying removal order had been sought. 464 F.3d 729–30.

Congress has specified the remedial actions the Board may and may not take, and those rules weren't transgressed here. The Board didn't readjudicate a previously disallowed "claim" based on the same factual record, 38 U.S.C. § 7104(b), or reconsider a "decision" without following prescribed procedures, 38 U.S.C. § 7103(a). Rather, it "recognized" and corrected the "distinct clear error" it made calculating the timeliness of the appellant's NOD. *Ante* at 11. There is at least arguable authority for this type of action under section 7103(c), which permits the Board to "correct an obvious error in the record, without regard to whether there has been a motion or order for reconsideration." And, indeed, if an appeal to the Court hadn't been filed so quickly, this sort of calculation correction would simply be seen as the sort of unremarkable exercise of agency authority it really is. (The Board's subsection (c) authority clearly doesn't permit actions that amount to claim readjudications or decision reconsiderations.)

Thus, the Board can take remedial action on a matter when its jurisdiction to do so is underwritten by statute. And because it had the authority to take remedial action here to correct obvious error, I agree fully with the majority that the case is moot.

FALVEY, *Judge*, concurring: I fully agree with the majority—this case is moot. I write separately to emphasize just how moot it is. Within a month of filing his NOA with this Court, Mr. Kernz had all the relief he wanted—VA had reactivated his improperly closed appeal. More to the point, he had all the relief that we could give him. Since then, his VA claim has progressed even further.

The Board recently remanded Mr. Kernz's claims to obtain missing records and a VA medical opinion.[130] That is relief we could not provide. Even accepting that the March 2020 VA letter is a decision, our jurisdiction would be limited to reviewing and providing relief based on that letter.[131] In short, the best we could do was order the Board to docket Mr. Kernz's appeal. Because the Board already did that, we would have had to order the Board to undo it only to then re-docket the appeal. In any case, Mr. Kernz would have waited for the Board to review the merits of his appeal with the only benefit of Court intervention being delay stemming from our order and perhaps a thoroughly chastised Board.

If that looks like a silly flex of judicial power, what would happen now could be characterized only as absurd. Mr. Kernz is now back before the agency of original jurisdiction

---

[130] *See* Secretary's September 11, 2023, *Solze* Notice at Ex. A.

[131] *See Furtick v. McDonough*, 34 Vet.App. 293, 299 (2021) (explaining that this Court's jurisdiction is limited to issues decided by the Board).

(AOJ) where VA is working to develop his claim. But the relief we could give him remains the same—we could only order VA to docket his appeal.[132] But to get there, we would have to order VA to drag his claim back to the Board; shred the remand and associated development; dismiss his appeal and re-docket it; and have Mr. Kernz patiently wait (again) until the Board reviewed his case (again).[133] Whatever Congress expected when it created this Court, it can't have wanted that. And whatever reasonable disagreement we may have about the limits of our jurisdiction or the propriety of the Board's actions, "holding [Mr. Kernz] up to flex our jurisdictional muscles and prove an unnecessary point to the Board is not doing the right thing in the right way for the right reason."[134]

BARTLEY, *Chief Judge*, with whom GREENBERG and JAQUITH, *Judges*, join, dissenting: This case is not about mootness—it is about the Board overstepping its jurisdiction and acting in utter disregard of a veteran's exercise of his right to judicial review. By focusing on events that occurred after Mr. Kernz filed his Notice of Appeal (NOA) with this Court, the majority overlooks that the Board was divested of jurisdiction at that point and had no authority to continue processing the appealed issue. Absent permission from the Court, which the Secretary admits was not sought, the Board was simply unable to provide Mr. Kernz with any relief after he filed his NOA. Contrary to the majority's conclusion, no amount of hindsight or good intentions can cure that lack of jurisdiction. To hold otherwise would be to allow the Board to unilaterally deprive veterans of their duly exercised right to judicial review and interfere with the Court's independent consideration of those appeals. We dissent from today's decision because the Board's unauthorized post-NOA actions in this case are a legal nullity, incapable of mooting Mr. Kernz's appeal.

Thirty-two years ago in one of our earliest precedential decisions, *Cerullo v. Derwinski*, 1 Vet.App. 195 (1991), we addressed the legal effect of filing an NOA to the Court. We emphatically rejected the concept of concurrent or dual plenary jurisdiction between the Board and the Court. *Id.* at 197. Relying on Supreme Court precedent, we held that when an NOA is filed, plenary jurisdiction over the appealed issue transfers from the Board to the Court, and the Board is thereafter prohibited from acting on that issue without the Court's permission. *Id.* at 196-97 (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the

---

[132] I recognize that Mr. Kernz told us he was confused about whether the Board would consider evidence and argument he submitted. For better or for worse, that confusion has now been resolved—the Board found that, because Mr. Kernz did not resubmit any evidence or argument he wanted considered after the August 2020 corrective action, it would not consider his earlier submissions. *See* Secretary's September 11, 2023, *Solze* Notice at Ex. A. The wisdom or the legality of the Board's finding is not before us. We don't review remands. *Gardner-Dickson v. Wilkie*, 33 Vet.App. 50, 56 (2020), *aff'd without opinion sub nom. Gardner-Dickson v. McDonough*, 2021 WL 5144367 (Fed. Cir. Nov. 5, 2011). Nor has Mr. Kernz tried to appeal the Board's remand to our Court. Even if this were something for us to consider in this case, it is hard to ignore that, despite refusing to include the evidence in the record before it, the Board remanded Mr. Kernz's claim back to the AOJ—where the duty to assist exists and the record is wide open. *See* 38 U.S.C. § 5103A(e)(1); *see also* 38 C.F.R. § 3.2502 (2023). Thus, I don't think VA can duck giving that evidence due consideration even if Mr. Kernz did not submit it when asked by the Board.

[133] The only way this could get worse is if this appeal were further delayed before our Court or the Federal Circuit and, at some point, VA was ordered to undo medical exams or perhaps a grant of benefits.

[134] *Encarnacion v. McDonough*, 36 Vet.App. 194, 219 (2023) (Falvey, J., dissenting).

20

appeal.")), 201. The filing of an appeal to this Court marks the end of the agency's ability to consider the appealed issue, regardless of the Board's intentions. *Cerullo*, 1 Vet.App. at 197 ("Once an appellate body takes jurisdiction over a claim, the lower tribunal may not consider the same issues.").

This unqualified transfer-of-jurisdiction rule is not a mere technicality. It is necessary to prevent agency interference with a veteran's statutory right to judicial review—it is necessary to ensure the Court's independent exercise of review authority—and, it is necessary to "prevent the procedural chaos that would result if concurrent jurisdiction were permitted." *In re Combined Metals Reduction Co.*, 557 F.2d 179, 200 (9th Cir. 1977). We need look no further than Mr. Kernz's case for proof of procedural chaos.

While the Court expended judicial time and resources on Mr. Kernz's case, the Board took action after action on the very same issue that was before the Court. And it is unsurprising that Mr. Kernz was confused about his legal obligations when "the Board did not attempt to modify, vacate, rescind, or alter the March 2020 [untimeliness] letter in any way," *ante* at 12, when the Secretary concedes that the Board is prohibited from acting on an issue after the filing of an NOA as to a final Board decision, En Banc Oral Argument at 18:34-:54, and when, as the record reflects, while this appeal was pending the Board took two additional actions that provided Mr. Kernz with different and conflicting evidence submission guidelines, *see* Appellant's June 2, 2020, *Solze* Notice at Ex. B; Secretary's August 31, 2020, Resp. at 2, Ex. A. *See Encarnacion*, 36 Vet.App. at 202 ("Action taken by the Secretary on an issue that is pending before this Court risks confusion as to governing procedures and deadlines.").

The majority calls *Cerullo*'s transfer-of-jurisdiction rule a "general, largely unremarkable, principle in federal appellate practice," *ante* at 12, and insists that their decision should not be read as overruling *Cerullo* in any way, *ante* at 15-16. But by ignoring *Cerullo*'s core holding that the filing of an NOA divests the Board of jurisdiction over the appealed issue, the majority undermines the very "bedrock, institutional principle" that *Cerullo* stands for, *ante* at 15. In fact, the majority goes one step further, holding that the Board can strip the Court of "the power to engage in judicial review" by continuing to process an issue that has been appealed to the Court. *Ante* 16. At no point, however, does the majority provide support for this usurpation of the Court's power or even identify a legal authority that would give the Board jurisdiction to continue action on Mr. Kernz's appeal after he filed his NOA.[135] Their failure to do so nullifies the "fundamental distinction" that they draw between this case and *Cerullo*—that the Board in this case, unlike the Board Chairman in *Cerullo*, "fully resolve[d] the controversy between the parties." *Ante* at 13. If the Board did not have jurisdiction over the appealed issue, it did not have legal authority to provide the veteran relief. And so, a live case or controversy still remains.

The Board's desire to correct an error cannot expand its jurisdiction beyond that set by Congress, nor can it empower the Board to intrude on the Court's jurisdiction in the name of

---

[135] In his separate statement, Judge Toth suggests that 38 U.S.C. § 7103(c) might fill this gap, *ante* at 19, but the Court has previously concluded otherwise and the majority does not appear to overrule that precedent. *See Smith v. Brown*, 8 Vet.App. 546, 551-52 (1996) ("An appellant cannot be deprived of his or her right to appeal to this Court as a result of the Chairman's action to reconsider a prior decision, *or as a result of action by the [Board] to correct an obvious error in the record, under 38 U.S.C. § 7103*." (emphasis added)).

providing quicker administrative relief. *See Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005) (noting that 38 U.S.C. § 7104(a) defines and "limits" the Board's jurisdiction). Fortunately for veterans and the Board, *Cerullo* allows the Secretary to file a joint motion for remand or request the Court's permission to resolve an appeal if the Board or Board Chairman wishes to correct an error after an NOA has been filed. 1 Vet.App. at 200-01. This process respects the congressionally defined jurisdictional boundaries between the Board and the Court, is consistent with federal appellate practice in general, and maintains an avenue for the Secretary to administratively resolve cases with the Court's permission when it would be more efficient to do so. *See id.* at 196-201.

Yet the Secretary did not ask permission in this case. If he had, the majority would not need to contort the law or overrule three decades of precedent. But in the absence of such a request, we must conclude that the Board's post-NOA actions were a nullity, as they were taken without jurisdiction or any legal authority. *See id.* at 196, 201. The majority's post-hoc rationalization cannot bestow jurisdiction on the Board where Congress has not done so. *See Bates*, 398 F.3d at 1359.

The Seventh Circuit cases cited by the majority support us. In *Gao v. Gonzales*, the Seventh Circuit concluded that an agency's post-appeal actions mooted an appeal only because the statute authorizing judicial review expressly provided that "a single [] matter may be before the court and the agency for decision simultaneously." 464 F.3d 728, 730 (7th Cir. 2006) (citing *Stone v. INS*, 514 U.S. 386 (1995)). Contrast that with *Doctors Nursing & Rehabilitation Center v. Sebelius*, where the Seventh Circuit held that a different agency's post-appeal actions did not moot the appeal because there was no concurrent jurisdiction statute that authorized the agency's actions—in fact, there was a statute that specifically forbade such actions. 613 F.3d 672, 681 (7th Cir. 2010). In explaining these different outcomes, the Seventh Circuit stated that "*Gao* did not establish a general rule that agencies may divest courts of jurisdiction by reopening final decisions," as "*Gao* was careful to justify its holding based on the particulars of the [] context"—i.e., the statutory scheme that "empowered [the agency] to consider, and decide, the very same question that was pending before the court." *Id.* at 678. So, contrary to the majority's assertion, *Doctors Nursing* does not direct that the ordinary transfer-of-jurisdiction rule "does not control when 'there was no more relief that the court could have granted once the agency itself decided to give petitioner the very thing he was asking of the court.'" *Ante* at 14 (quoting *Drs. Nursing*, 613 F.3d at 678). Instead, *Doctors Nursing* and *Gao* reinforce the principles underlying *Cerullo*, that the filing of an NOA divests an agency of jurisdiction over the appealed issue and that post-appeal agency action taken without jurisdiction will not moot that appeal.

Regardless, we needn't rely on Seventh Circuit cases to justify our disagreement with the majority. The U.S. Court of Appeals for the Federal Circuit has held that agencies are required to seek permission from a reviewing court to correct even minor, clerical errors once a court's "exclusive jurisdiction has been invoked." *Zenith Elecs. Corp. v. United States*, 884 F.2d 556, 561 (Fed. Cir. 1989). This is so, the Federal Circuit reasoned, because "the effect of any correction of clerical error is to change either the decision under review or the factual basis upon which that decision was based." *Id*. This Court in *Lauigan v. Brown* relied on *Zenith Electronics* to extend *Cerullo* beyond Board Chairman reconsideration, holding that, after an NOA has been filed, the Secretary must seek the Court's permission to correct even a "minor, non-substantive" Board error. 5 Vet.App. 358, 359 (1993). Obviously, improper dismissal of an appeal on jurisdictional grounds,

such as that involved in Mr. Kernz's case, is more than a minor, non-substantive error. We can think of no principled reason to require the Secretary to seek the Court's permission to correct a clerical Board error but not a substantive Board error. That result would be particularly hard to justify in Mr. Kernz's case, as the Board's post-NOA actions included an outright reversal of its untimeliness determination and a reinstatement of a previously terminated appeal.

In the end, this case turns on the effect of filing an NOA. For the past 32 years, that filing has been an event of jurisdictional significance that terminated the Board's ability to act on an appealed issue. But, apparently, not anymore. In fact, the majority extends an open invitation to the Board, without so much as a by-your-leave from the Court, to meddle in the Court's docket. The majority's decision ties the Board's and the Court's jurisdiction to the eventual outcome of the Board's concurrent, and completely unauthorized, consideration of an issue pending before the Court. If the Board purports to give a claimant the relief sought on appeal, the majority will overlook the Board's lack of jurisdiction and authority to provide that relief in the first place. But jurisdiction cannot depend on events that have not occurred—indeed, may never occur—at the time that an NOA is filed. Jurisdiction is simply not that fickle. *See Cerullo*, 1 Vet.App. at 197 ("Jurisdiction is not something that 'can float in the air' to be seized by any tribunal at any time." (quoting *Cochran v. Birkel*, 651 F.2d 1219, 1222 (6th Cir. 1981))); *see also Buffington v. McDonough*, 143 S. Ct. 14, 15 (2022) (Gorsuch, J., dissenting from denial of cert. pet.) (agreeing with Judge Greenberg's criticism of the majority's "'rubber stamping of the Government's attempt to misuse its authority'").

*Cerullo*'s unqualified transfer-of-jurisdiction rule is clear, predictable, and fair. It safeguards a claimant's statutory right to judicial review free of agency interference, gives full meaning and respect to a claimant's decision to have the Court—not VA—decide an appealed issue, avoids the unnecessary confusion of concurrent adjudication, and allows the agency to request the Court's permission to administratively resolve an appeal. Veterans and their families deserve to have their day in court, and we owe them no less than a full and meaningful opportunity to be heard on all issues that have been properly appealed to us. Because we are unwilling to sacrifice these ideals for administrative efficiency, we must respectfully dissent from today's decision.

JAQUITH, *Judge*, dissenting: I wholeheartedly join in Chief Judge Bartley's dissent. I write separately to emphasize my disagreement with the majority's unsolicited retrocession of independent judicial review and address the effect of the Court's inaction in this case. The significance of the majority's disregard of the clear mandate of *Cerullo* is best illustrated by the warning at the center of that foundational decision: allowing the Board to strip the Court of jurisdiction by taking unilateral action on a case already on appeal to the Court gives the Board "the power to defeat meaningful judicial review and thereby subvert the intention of Congress in enacting the Veterans' Judicial Review Act." *Cerullo v. Derwinski*, 1 Vet.App. 195, 198 (1991). The Court's charge is to provide veterans with the independent judicial review "'necessary in order to provide such claimants with fundamental justice.'" *Id.* (quoting S. REP. 100-418, at 49 (1988)). When the Court allows systemic ease and expedience to trump the veteran's right to independent judicial review, the Court's authority, utility, and credibility are imperiled.

The majority does not decide the parties' actual dispute. On March 24, 2020, the Board notified the veteran that his appeal of a regional office's decision was untimely and the Board would not process it. The Board advised the veteran that if he disagreed with the Board's determination he could request an extension of time and try to demonstrate good cause for his untimeliness. The problem was that the veteran's Board appeal was not untimely, it was timely. So he promptly appealed the Board's erroneous contrary decision to the Court.

The Secretary reacted to the veteran's appeal to the Court by contacting the Board, which then figured out that its March 2020 letter was wrong. On May 4, 2020, the day the Board decision was due to be filed with the Court, the Secretary asked the Court for more time to find the decision, saying that he "had located a Board notification letter with [that] date . . . [but had] not located a Board decision with that date." On May 7, 2020, the Board notified the veteran that its March 2020 letter telling him that his appeal was ineligible for review was erroneous and it was docketing his Board appeal. At no time before May 7, 2020, or even after that date, did the Secretary advise the Court that the Board would acknowledge and correct its error and file a motion for remand for the Board to do so, as *Cerullo* requires.

Instead of seeking permission, or even after-the-fact forgiveness, the Secretary has steadfastly pressed the misguided argument, beginning with his July 1, 2020, motion to dismiss, that "[t]he Court cannot exercise jurisdiction over the Board's March 24, 2020, notice letter because it is not a decision of the Board." Secretary's July 1, 2020, Mot. to Dismiss at 2. Contrary to the majority's assertion, *ante* at 6, the Secretary did not alternatively argue that the veteran's appeal was moot because his appeal had been docketed. Full Court Oral Argument (FCOA) at 15:04-:54. The Secretary's August 31, 2020, submission (upon which the majority relies), asserts that the Board had cured its error(s), but never mentions mootness. When the Secretary *does* first mention mootness, in his May 17, 2021, response to the veteran's request for class action, it was only to state that the request for class action was moot because the March 24 letter was not a decision of the Board:

> The Court should dismiss Appellant's attempted appeal for lack of subject matter jurisdiction because the Board's May 24, 2020, notice letter is not a "decision" of the Board. And because the Court lacks subject matter jurisdiction over the notice letter, Appellant's dependent RCA is moot as every putative class member would suffer from the same jurisdictional flaw.

Secretary's May 17, 2021, Resp. to the RCA at 11. The Secretary did argue that the Board's publication of notice and an opportunity for recalculation of timeliness—more on that below— and the docketing of the veteran's appeal rendered the class action "essentially moot." Appellee's Resp. to the Court's June 11, 2021, Order at 9. But the Secretary returned to his original position at the outset of oral argument in June 2023, explaining that

> [t]he Secretary maintains his position that the notice letter at issue in this case is not a final decision of the Board. Because it is not a final decision of the Board, this Court does not have jurisdiction over this appeal. Because there's no jurisdiction, the request for class action is moot and we respectfully request that this Court dismiss the appeal and find the dependent request for class action moot.

24

FCOA at 11:39-12:01; *see also* FCOA at 15:29-:54 (affirming that the Secretary had argued mootness only in connection with the request for class action and even then based on his position that there was no final decision by the Board). Further, the Secretary persistently argued that he did not think *Cerullo* applied because the March 24, 2020, notice letter was not a final Board decision, but agreed that, if it was a final decision and an NOA was filed, the Board "absolutely" could not divest the Court of jurisdiction by unilaterally reopening its administrative proceedings. FCOA at 18:35-18:50. The Secretary reassured the Court that "if this was, in our view, a final Board decision, the Secretary and the Board would have taken no action." FCOA at 18:50-:58.

In short, the Secretary's opposition to the veteran's appeal and VA's disregard of *Cerullo* rested entirely on the Secretary's view that the Board's March 24, 2020, letter was not a Board decision. The majority declines to decide that issue; instead, it takes over the litigation by making the mootness argument it finds dispositive. *Cf. Frantzis v. McDonough*, 35 Vet.App. 354, 366 (2022) (declaring that "[c]ourts generally should not advance arguments for represented parties when such parties have declined to do so themselves" and "courts should not be advocates," and applying those precepts to forgo consideration of fair process). Neither the Secretary's argument nor the majority's argument is persuasive; both arguments leave veterans in the lurch. The Board's March 24, 2020, letter *was* a Board decision and the Board's May 2020 action to reverse that decision was ineffective because jurisdiction had passed to the Court when the veteran filed his NOA in April 2020.

The Secretary creatively argued that the Board's March 24, 2020, letter "was a prudent and informative notice provided to Appellant, and his attorney, to assist in navigating the different options available to him as it pertained to the timeliness of his appeal." Secretary's Resp. to Court's July 31, 2020 Order at 1, n. 2. Most of the Secretary's 2022 oral argument contended that the Board's March 2020 letter was only the first step in a two-step process for addressing veterans appeals, the first of which constituted a preliminary determination by "an administrative professional" and the second, if sought by the veteran, involved a final decision by a Board member. *See* Panel Oral Argument, available at https://www.youtube.com/watch?v= dqBHabRI3Uw; Secretary's Resp. to RCA, Ex. J, Declaration of Board Vice-Chairman Arnold, ¶ 20. The idea was that this two-step process afforded the veteran the right to an administrative appeal of an adverse timeliness determination. Accepting the Secretary's argument as an explanation of what the Board *intended*, (1) it is not at all clear that such a process had even been established in March 2020, and, crucially, (2) the Board did not tell Mr. Kernz of any such internal process on March 24, 2020, only that his appeal was untimely and would not be considered. When a veteran who has been denied benefits by the RO appeals to the Board and the Board responds that it isn't going to process the appeal, the veteran reasonably reads that as saying he or she isn't getting those benefits.[136] By erroneously concluding that the veteran's appeal was untimely and telling him that his claim was therefore ineligible for Board review, the Board communicated finality—that agency consideration of his claim had ended with the RO's denial of benefits. The Board left Mr. Kernz in the worst possible situation for a veteran: his case was rejected and not even docketed, so he had no opportunity to get benefits and no one even knew that he had been cast into the abyss.

---

[136] A letter advising the veteran that his appeal was untimely and the Board would not consider it, without any mention of an opportunity to challenge that determination, screams final decision, not "prudent and informative notice"— especially when the letter comes from the Vice-Chairman of the Board.

A full year after learning that it had fumbled Mr. Kernz's Board appeal, the Board began telling veterans to whom it provided notice of untimeliness that they could challenge that determination within the Board and obtain a final Board decision. Secretary's Notice of Clarification at 1. But there were and are untold others who, like Mr. Kernz, had already erroneously been given an apparently final answer of "no" without notice of any right to appeal. Untold because the Board says it is too difficult to determine how many veterans were victimized by the Board's bad calendar counting. In several filings, the Board has explained that it is unable to determine or estimate the number of notice letters issued that may have mistakenly rejected timely appeals, blaming limitations in its electronic systems. *See, e.g.*, Secretary's Resp. to Court's June 11, 2021, Order at 4. With access only to general VA data and the direct experience of his lawyer's firm, the veteran has estimated the number of claimants whose Board appeals were erroneously rejected to be from 1,512 to 2,075. *See* Request for Class Certification and Class Action at 5-6; Appellant's Reply to the Secretary's Resp. to the RCA at 13. The Board's effort to ascertain the expanse of its error apparently has been limited to publishing a notice, on August 23, 2021, that "a limited number" of veterans who filed Board appeal forms between February 19, 2019, and March 23, 2021, may have had their forms "mistakenly rejected for being untimely," and giving such veterans until March 1, 2022, to send a letter to the Board asking it to "recalculate timeliness." Secretary's Resp. to Court's June 11, 2021, Order at 3; *see* Secretary's Resp. to the RCA, Ex. J, ¶ 3-22. At the March 2022 panel oral argument, the Secretary said the Board had received 15 responses and "really only 5 of those were actually purely untimely." Panel Oral Argument at 18:39-18:58. The Board recently highlighted that it had received no additional responses to the notice since March 2022 and detailed the Board's efforts "to reach as many [v]eterans as possible." Secretary's Notice in Resp. to the Court's Jan. 20, 2023, Order, Affidavit of Deputy Vice-Chairman Santoro, ¶ 8-9. But the effort necessary to actually identify the veterans whose appeals the Board erroneously extinguished is, the Court has repeatedly been told, too hard.

Instead, the Court was informed that "[t]he Board has confirmed that—notwithstanding the March 1, 2022 deadline in its August 2021 Notice . . . it will continue to honor future recalculation requests for timeliness notice letters issued between February 19, 2019 and March 23, 2021." Secretary's Notice of Clarification and Information at 2. It is hardly surprising that the Board has not received any further responses than the 15 reported in March 2022 since the notice of error told those disenfranchised that any such responses would be pointless. Moreover, the Secretary has not offered any basis for the Board setting a deadline for veterans to attempt to revive timely Board appeals the Board erroneously extinguished.

After oral argument, the Secretary informed the Court that the Board has decided the veteran's appeal, remanding it for further development.[137] And the harm the veteran feared[138] has come to pass: the Board declined to consider favorable evidence he submitted just 20 days after the Board notified him that it had erred in deeming his appeal untimely and refusing to process it,

---

[137] *See* Secretary's September 11, 2023, *Solze* Notice at Ex. A, and Secretary's September 14, 2023, *Solze* Notice at Ex. A.

[138] *See, e.g.*, FCOA at 1:04:39-:06:39 (arguing that the Board's unilateral action created significant confusion by creating three separate 90-day evidentiary windows and noting that the veteran submitted his evidence in the window following the Board's May 2020 notice).

but did not tell him that any submission of evidence was already too late because the evidentiary window had expired on April 16, 2020.[139] Following the rules prescribed by *Cerullo* should have ensured a clearer, better outcome.[140]

The majority walks away from the mess the Board created, leaves victimized veterans adrift, and embraces but eviscerates *Cerullo* by clearly overruling the specific holding of that bedrock, foundational case: "[W]hen an appeal is pending before this Court no action may be taken affecting any case except by order of this Court upon terms specified by it." 1 Vet.App. at 201. The majority casts aside a recent reaffirmation of *Cerullo*, too, endorsing (*ante* at 14, n. 106) the dissent in *Encarnacion v. McDonough*, where the Court expressly held that the Board's unilateral action on an issue that had been appealed to the Court violated *Cerullo* and "was of no legal consequence." 36 Vet.App. 194, 202 (2023). And the Court's decisions in *Smith* and *Lauigan* are implicitly nullified by the majority as well. *See Smith v. Brown*, 8 Vet.App. 546, 551-52 (1996) (en banc) ("An appellant cannot be deprived of his or her right to appeal to this Court as a result of the Chairman's action to reconsider a prior decision, or as a result of action by the [Board] to correct an obvious error in the record, under 38 U.S.C. § 7103."); *Lauigan v. Brown*, 5 Vet.App. 358, 359 (1993) (per curiam order) ("[A]fter the timely filing of a notice of appeal, agency corrective action [of even a minor, obvious clerical error or oversight] could be made only with the prior approval of the [C]ourt."). Now this Court's jurisdiction is in the Board's hands, fettered only by a suggestion that the Board "should seek the Court's permission as *Cerullo* requires," *ante* at 15—or, more accurately, required until today.

The majority invokes *Doctors Nursing & Rehabilitation Center* as justification for this new misadventure but fails to account for that case's holding that "the agency may not, during the pendency of judicial review, reopen and revise a final decision without permission from the court," lest the agency possess "the unreviewable power to manipulate federal jurisdiction." *Drs. Nursing & Rehab. Ctr. v. Sebelius*, 613 F.3d 672, 680 (7th Cir. 2010). The majority empowers the Board to divest the Court of jurisdiction—and thereby control our docket—by manufacturing mootness through unilateral action whenever they fear an adverse precedential decision and quietly defers to the Board's assertion that is too hard to determine which veterans were harmed by its error or even estimate how many. What is unquantifiable but undeniable is the corrosive effect of looking the other way and shrugging when the Board—the Agency's steward of the rule of law—violates a settled jurisdictional rule in a case before the Court. The Court was created to fulfill the VJRA's promise to provide veterans "'the basic protection of the independent judicial branch.'" *Prewitt v. McDonough*, 36 Vet.App. 1, 22-23 (2022) (Jaquith, J., concurring) (quoting 134 CONG. REC. 31,224); *see Cerullo*, 1 Vet.App. at 198. This is not about flexing our jurisdictional muscles, *ante* at 20, it is about preserving a foundational principle so judicial review is provided as promised.

Our responsibility to do the right thing in the right way for the right reason[141] cannot be reconciled with overriding, purportedly for his own good, the veteran's persistent request for a

---

[139] *See* Secretary's September 11, 2023, and September 14, 2023, *Solze* Notices at Ex. A at 2.

[140] *Cerullo* requires the Secretary to file with the Court a motion for remand for the Board to correct its error, and "[t]he motion must clearly articulate the reasons for the request and the nature of the proceedings proposed by the Secretary," with the veteran afforded an opportunity to respond. 1 Vet.App. at 200.

[141] *See Encarnacion*, 36 Vet.App. at 208 (Jaquith, J., concurring); *ante* at 20.

judicial decision, disregarding the Secretary's understanding of the dictates of *Cerullo*, and retroactively ceding our jurisdiction to the Board. The end does not justify the means. Adherence to *Cerullo* and the slight inconvenience its jurisdictional bright line requires—seeking permission and remand to take a Court case back for Board action—doesn't seem too much to ask to maintain fair and orderly independent judicial review. I respectfully dissent.